| 86 | 53 |
| 95 | 164 |

CASE 10—PETITION EQUITY—JUNE 18.

# City of Louisville v. Murphy, &c.
# Reed v. Same.

APPEALS FROM LOUISVILLE CHANCERY COURT.

1. TAXATION.—A statute providing for the imposition of a tax " as long as needed " to pay a particular debt, authorizes the imposition of the tax until the debt is satisfied, or until a sum sufficient for that purpose has been raised by the tax.

The charter of the city of Louisville provides, that " if in any year the general council shall fail to pass a levy ordinance, or if the levy ordinance in any year shall be invalid or inoperative, the rate of taxation for the succeeding year shall be as follows," specifying a certain

amount for city purposes proper, a certain amount for school purposes, and so for various other purposes, and for subscription to certain railroads, " *as long as the taxes are needed*, thirty cents." For some reason the city council failed to pass any levy ordinance for the collection of taxes for the year 1887, and, therefore, the only authority for collecting city taxes for the year is the charter provision quoted. *Held*—That the tax of thirty cents for subscription to railroads may be enforced, the bonds issued therefor being still unpaid. The fact that this tax is not needed for the year 1887 to pay interest or to pay bonds maturing, is not a sufficient reason for restraining the collection of the tax, the object of the tax being the accumulation of money to pay the entire principal and interest.

2. SAME.—While the Legislature may confide to the general council of a city a discretion as to the amount of a tax to be imposed, it cannot confer upon the collector or other city officer such a power, and if the charter provision referred to attempted this it would be void.

3. POWERS OF MAYOR OF CITY.—While, as a general rule, the mayor of a city has no authority by virtue of his office to authorize litigation in behalf of the city, or to employ counsel to represent it, cases of emergency may arise where the power must necessarily exist.

In this case the city officials were proceeding to collect a tax without any ordinance of the city council. The city council failing to take any action, the city attorney was not disposed to do so, but being in doubt as to the validity of the tax, advised action of some sort by the mayor, who employed counsel to institute suit to restrain the collection of the tax. *Held*—That the emergency justified the action of the mayor.

B. F. BUCKNER, R. W. WOOLLEY AND J. G. SIMRALL FOR APPELLANTS.

1. It was improper to admit the commissioners of the sinking fund as parties. Until money gets into the sinking fund the power of the commissioners over it does not exist. (City Code, 699, sec. 29; Elliott's Dig., 818; City Code, 631, sec. 5; City Code, sec. 14; *Id.*, 262, sec. 36; *Id.*, 473, sec. 23; *Id.*, 630, sec. 2; McReynolds v. Smallhouse, 8 Bush, 456; Commonwealth v. Todd, 9 Bush, 713.)

2. A municipal corporation may, in its *own name*, bring suit in proper cases to be relieved against illegal and fraudulent acts on the part of its officers; and the power to bring such a suit in the name of the city resides in the mayor. (2 Dillon Munic. Corp., sec. 921; Gennic, Mayor, v. Lockett, 13 La., 545.)

The power of the mayor in this regard is like that of the president of a bank, or any commercial or trading corporation over subordinate officers. (Morse on Banking, p. 144, note 1; Savings Bank of Cincinnati v. Benton, 2 Met., 240; American Ins. Co. v. Oakley, 9 Paige,

496; Mumford v. Hawkins, 5 Den., 355; Oakley v. Workingmen's Benevolent Society, 2 Hilt., 487; Alexandria Canal Co. v. Swann, 5 How., 83.)

Cases commented on : Butler v. Charlestown, 7 Gray, 12; the application of the Mayor of New York, 99 N. Y.; Fletcher v. Lowell, 15 Gray, 103.

3. The fourth section of the act of 1884 does not *proprio vigore* levy the tax of thirty cents for the payment of railroad bonds; the levy of the thirty cents is not needed; and the fourth section of the act making the levy being conditional and dependent upon the necessity for the taxes to pay the principal and interest of the railroad debt, the attempted levy is void for the double reason that no tribunal is appointed by the act to determine the necessity, and that an act of the Legislature, especially one levying a tax, cannot be valid if its existence depends on any collateral fact other than a vote of the people.

A tax cannot be imposed except on *clear and distinct* legal authority established by those who seek to impose the burden. (Brown's Legal Maxims, 3; Gorling v. Veley, 4 H. L. Cases, 727; Dean v. Diamond, 4 B. & C., 245; Garr v. Scudds, 11 Exch., 190; Cooley on Taxation, 200; Adams v. Bancroft, 3 Sumner, 387; Desty on Taxation, vol. 1, p. 102.)

GOODLOE & ROBERTS, MUIR & HYMAN, WM. LINDSAY FOR APPELLEES.

The object in creating a sinking fund is the accumulation of a fund for the payment of an outstanding indebtedness. As long as that indebtedness is outstanding the specific tax to meet it will be continued, notwithstanding there are moneys in the sinking fund, accumulated for other purposes, sufficient to meet the indebtedness for which the specific tax is levied.

L. M. DEMBITZ FOR APPELLEES.

Brief not in record.

CHIEF JUSTICE PRYOR DELIVERED THE OPINION OF THE COURT.

These two cases, the one in the name of the City of Louisville against Daniel Murphy and others, and the other in the name of P. B. Reed against the same parties, were heard together in the court below, and argued as one case in this court.

The object of each action is to enjoin the assessor of

the city of Louisville from including in his tax-bills
an item of thirty cents on each one hundred dollars'
in value of taxable property levied to pay the inter-
est on bonds issued by the city to the Louisville, New
Albany and St. Louis Railroad, and to the Elizabeth-
town and Paducah Railroad. The entire amount due
or to become due by the bonds is two millions five hun-
dred thousand dollars; five hundred thousand dollars
due in 1891 to the first-named road; one million due to
the last-named road in 1888, and the other million in
1903; nearly all of the bonds remain unpaid, and all
bearing interest.

By an act to amend the charter of the city of Louis-
ville, approved March 30, 1880, it was provided that
"the general council of the city of Louisville shall, for
the purpose of providing for the payment of the prin-
cipal and interest of the bonds issued by said city to
the Elizabethtown and Paducah Railroad Company,
dated October 1, 1868, and the bonds issued to the same
company, dated January 1, 1873, and the bonds issued
to the Louisville, New Albany and St. Louis Railway
Company, dated September 1, 1871, continue to levy
*annually* and cause to be collected a tax of thirty cents
on each one hundred dollars' worth of the property,
real, personal and mixed, money, choses · in action,
bonds, stocks and evidences of debt in said city, sub-
ject to taxation under the revenue laws of the State of
Kentucky, and said levy shall *continue* to be made so
long as it shall be necessary to pay the principal ·and
interest of said bonds. Said taxes, when collected, shall
be paid into the sinking fund of said city, and said
*sinking fund shall with said taxes*, and other re-
sources, *pay the aforesaid bonds.*

"Section 5. The bonds authorized to be issued by this act, and all other bonds of said city for which the city is primarily liable, *shall be a charge* on the sinking fund of said city.

"Section 6. Nothing in this act shall repeal the authority which the city of Louisville has to levy and collect taxes to pay the principal and interest of the bonds herein charged on the sinking fund, should said taxes be necessary to pay the same."

By a subsequent act of May 12, 1884, amending the city charter, it is provided :

"Section 3. The general council shall in each calendar year, as early in the month of December as practicable, by ordinance, levy an *ad valorem* tax not exceeding the following rates : For city purposes proper, not more than eighty-five cents on each one hundred dollars ; for the support of the high schools and common schools, not more than thirty cents ; for meeting the principal and interest of the bonds issued to the Elizabethtown and Paducah, and the Louisville and New Albany and St. Louis Railroads, not more than thirty cents and a half ; for the use of the sinking fund, not more than forty cents ; for the House of Refuge, not more than five cents ; for cleaning and repairing sewers, not more than two cents ; for cleaning and repairing public ways and including footways and crossings, not more than thirty cents ; for reconstruction of carriage-ways of streets and alleys in conformity with section 6 of the charter amendment act, approved February 20, 1873, not more than twenty-six cents ; for bonds under the ordinance and vote of 1883, not more than twelve cents.   *   *   *

" Section 4. If, in any year, the general council shall fail to pass a levy ordinance, or if the levy ordinance in any year shall be invalid or inoperative, the rate of taxation for the succeeding year shall be as follows, and any tax-bill made by color of an invalid levy ordinance shall be valid to that extent: For city purposes proper, seventy-five cents on each one hundred dollars' worth of property subject thereto ; for school purposes, thirty cents ; *for subscription to the Elizabethtown and Paducah, and Louisville, New Albany and St. Louis Railroads, as long as these taxes are needed, thirty cents ;* for the sinking fund, forty cents ; for the House of Refuge, two cents ; for cleaning and repairing public ways, eight cents ; for cleaning and repairing sewers, one cent ; for reconstruction of carriage-ways, six cents ; for bonds under ordinance and vote of 1883, twelve cents ; in each case on the one hundred dollars' worth of property subject to such tax."

For some unaccountable reason the city council failed to pass any levy ordinance for the collection of taxes for city purposes for the year 1887, and, therefore, the only authority for collecting the taxes for this year for the purposes of the city is the act referred to, the fourth section, by which the Legislature has said that, in the event the city council should in any year fail to pass an ordinance for that purpose, or, if passed, the ordinance should prove to be invalid or inoperative, then the legislative ordinance shall be enforced at the rate of taxation therein prescribed.

It is now maintained by counsel for the appellants that the legislative ordinance embraced by the fourth section of the act, in so far as it attempts to authorize

the collection of taxes to pay the principal and interest of these bonds, is invalid and void ; and if not, that the tax imposed is not *needed* to pay the bonds or the interest on them for the year 1887.

The manifest object of the Legislature in adopting the fourth section of the act in question was to provide the city with means to carry on the municipal government in the event the council failed to pass an ordinance authorizing the tax, and to provide a remedy for imposing taxation in the event the ordinance passed for that purpose should prove invalid. The contingency upon which this legislation is to be enforced has transpired, and the principal question is as to the validity of the enactment.

It is conceded by counsel for the appellants, that as no levy ordinance was passed, all the taxes imposed by the fourth section can be collected, except the tax to pay these bonds, because a definite and specific sum has been fixed by the Legislature, to be collected without condition or limitation as to all other taxes; but as to the bonds, the levy is not only conditional upon the non-action of the council, but is made to depend upon the question as to whether such a levy is in fact needed for the payment of this indebtedness. That as there is no one to judge of the necessity for such collection, the city council having failed to take any action, neither the assessor or the receiver of taxes can assume to exercise this discretion, nor could the Legislature have invested them with such a power if such had been the object of the act.

If the construction placed upon that act by counsel is the correct one, we should not hesitate to reverse the judgment below.

The Legislature may delegate the power to the general council of a municipality to legislate as to its internal affairs; in other words, the general council is the local legislature of the city government, and to that body may be confided a discretion as to the wants and necessities of the local public, but to confide the power to the city officer or collector to impose taxes at his pleasure, even with a limitation, is not sanctioned by any judicial decision or constitutional precedent.

The object in creating the sinking fund, or the corporation known as the commissioners of the sinking fund of the city of Louisville, was that certain revenues then existing, belonging to the city, and such as might afterwards be acquired for that purpose, should be applied to the payment of the principal and interest of the public debt of the municipality. The act of 1869 increased the resources of the sinking fund, and the act of March 30, 1880, directed that the general council should, for the purpose of paying off these bonds, that is, the principal as well as the interest, continue to levy and collect every year this thirty cents tax, to be paid over by the treasurer of the city to the sinking fund commissioners. This entire bonded debt was to be paid out of the funds belonging to the sinking fund, and the evident purpose was to raise the money by taxation to meet not only the interest on the bonds, but to have the money in the sinking fund to pay the bonds as they matured. Nor were the resources of the sinking fund to be applied alone to this railroad debt, but to the entire debts of the city, and the fund to be held sacred for that purpose. If the purpose of this taxation was to pay the interest only, and not the prin-

cipal of the bonds, the question presented would be one of more difficulty. But the tax was levied, or directed to be levied, to pay the entire debt, principal and interest. The accumulation of the money is to pay the principal when due, as well as the interest, and this is denominated a sinking fund.

It is certain that the bonded debt, and for the payment of which the sinking fund is chargeable, exceeds nine millions of dollars, and near two millions of these railroad bonds outstanding, and the resources of the sinking fund will not exceed four and a half millions; and while the resources of the sinking fund may be sufficient to pay this particular bonded indebtedness, as it matures, for the next few years, there are other liabilities existing to which its resources may be applied; and that there is a surplus ready to pay a portion of the principal as it becomes due is no reason why the collection of the tax should be restrained, or a restraining order go because this tax is not needed for the year 1887; for this would exclude the idea of the power of the Legislature or the council, under its authority, to provide means under this taxing power conferred to meet the principal as well as the interest due on the bonds.

Whether there is an actual necessity for the imposition of this tax for the year 1887 is not, it seems to us, a material inquiry. Its collection is not indispensable, but might be postponed, and yet, by withholding the collection, the resources of the sinking fund are being lessened for the payment of the debt of the city.

The city council could decline to make a levy of

thirty cents upon the ground that the resources of the
sinking fund were ample, or would be made so in suc-
ceeding years, to meet these debts.   They might levy
under the act of May 12, 1884, a less sum than thirty
and one-half cents to pay the principal and interest of
the bonds, but this has not been done, and no levy im-
posed for any purpose, not even to defray the ordinary
expenses of the city, and in that event the Legislature
has already provided in express terms the rate of taxa-
tion to be imposed, including the tax to pay these
bonds, which is thirty cents, *as long as these taxes are
needed.*   What did the Legislature mean by the use of
the words *as long as these taxes are needed* is the im-
portant inquiry.   It certainly did not mean to say that
if the fund on hand was sufficent to pay the interest
due on the bonds no tax should be imposed.   The
annual levy was not to pay the interest alone, but to
raise a fund to pay the principal as well.   To raise the
whole sum by taxation when the debt becomes due
would create a burden that no local public could bear,
and, therefore, the object of the tax was to pay the
interest and have a fund accumulating to pay off these
bonds at maturity.   There is no discretion left with the
assessor or the tax receiver in regard to the amount
of tax to collect, where the city council has failed to
pass any ordinance, or the ordinance, if passed, is in-
valid.   The tax is thirty cents, and so declared by leg-
islative enactment.   The city officers have no power to
increase or diminish it, nor the right to judge of the
necessity for collecting it.   There has been no delega-
tion of power to them by the Legislature, and the duty
of collecting, under this legislative act, the thirty cents

for the payment of these bonds, is as imperative as the collection of any other taxes imposed by it. This tax is to be collected as long as needed, that is, until these bonds are paid off and the law exists under which the tax is imposed. If the words *as long as needed* had been omitted, the same meaning would have attached to the ordinance, as it could not well be contended that after the bonds were discharged, or a fund sufficient in the hands of the commissioners to pay these bonds, that the council or the tax-gatherer could proceed to collect this tax. A direction to the council to impose the tax *as long as needed*, means only its imposition until the bonds are paid off or a sufficient sum in the hands of the commissioners for that purpose, raised by this tax, which is equivalent to payment. A tax to be imposed *as long as needed* to pay a particular debt means an imposition of the tax until the debt is satisfied. The discretion in this case is with the city council as to the amount of tax. to be imposed; they may lessen it or not at their will under the act of 1884. But if such a power had been given to these officers, it would be null and void. The right to collect the thirty cents is only when the council declines to act, and when they fail to dischage this duty the legislative act, being mandatory, the officer proceeds to collect the thirty cents, and will continue to do so as long as the council declines to impose taxation for city purposes, or until these debts are paid.

This tax may be a heavy burden for the year 1887, but the council evidently thought otherwise, else they would have controlled the taxation by diminishing the amount. It was doubtless believed by some that the

sum ought to be reduced, and by others not, and know-
ing the existence of this legislative ordinance and the
fact that by its terms taxes were imposed for all city
purposes, declined to make any levy.

But whether or not their act in failing to make a
levy was an implied adoption of the legislative ordi-
nance is not important, for it is plain that the act of
the Legislature as to the amount of tax for the pur-
poses in question is certain, specific, unconditional and
mandatory, and with this construction, there can be
no difference between the counsel on either side or the
court as to the application of the law to the facts.
That the tax may not be essential or necessary for
the years '87, '88, and '89 will not stay the operation
of the fourth section of the act of May 12, 1884, and
whether it should have been thirty cents or less is
equally unimportant in this judicial proceeding.   When
the council fail to pass a levy ordinance the Legisla-
ture says that a tax of thirty cents shall be collected
as long as these taxes are needed, and that is not to
pay the interest for one or more years, or the bonds
maturing in one or more years, but until the debt is
paid.   The question of expediency is not an argument
for or against the validity of this tax.   It might have
been diminished, if onerous, by the council, in whom
was vested the power, but the arm of the chancellor
can not be extended to grant the relief.

It is the duty of the commissioners of the sinking
fund to make any surplus profit over to the city in the
manner pointed out by the charter, or the act creating
the corporation.   It is to be assumed that they will
discharge this duty.   The judgment, therefore, dis-

missing the action of P. B. Reed against the appellees is affirmed.

The question of the right of the mayor to employ counsel has been raised in the case of the Mayor against the city heard with this case.   His right to an injunction is denied by the opinion already delivered in the case of P. B. Reed against the tax-collector.

While, as a general rule, the mayor of a city has no authority by virtue of his office to employ counsel, the power being conferred by the charter or by the Legislature of the city, cases of emergency may arise when the power must necessarily exist.   It is made the duty of the mayor to see that the law and ordinances of the city are faithfully executed, and that the official duties of the city officials are faithfully performed.   In this case the council had failed to impose any tax.   The city was left without means, as the mayor had the right to suppose, of carrying on the city government.

The officials were proceeding to collect a tax without any ordinance of the city council.   The city council was disposed not to move the one way or the other. The assistant city attorney advised action of some sort by the mayor.   He was in doubt as to the validity of the act, but was not disposed to take steps, and we think properly, against the action, or rather the non-action, of the city council, and the steps about being taken by the city officials to collect the tax by distraint and otherwise.   In such an emergency he called on counsel for advice, and brought the action to restrain what was supposed to be an illegal collection of a tax unlawfully imposed.   We think that such a power existed, nor are the cases of Fletcher v. The City of

Lowell, 15 Gray, 103, and Butler v. Charlestown, 7 Gray, 12, in conflict with this view of the question. His appeal as mayor, however, must be dismissed on the merits of the controversy. This view as to the right of the mayor is sustained by the case of The Mayor v. Lockett, 13 La., 545, and while that case goes further than this court would be disposed to go, yet it is based on the fact that it was the duty of the mayor to see that the laws of the city are faithfully executed. We think the mayor has no general power to authorize litigation in behalf of the city or to control it. If so, he could disregard the legislative will of the municipality, bringing and dismissing suits at his pleasure. It is certainly an exceptional case where it should be allowed, and one that seldom arises; but the emergency in this case justified the act, as all the parties acted, no doubt, in the best of faith.

It is insisted by counsel for the appellants that neither the sinking fund commissioners nor the bondholders should have been made parties. This question only involves one of costs, so trifling as not to demand a reversal if the appellants are right. We have not considered it.

The judgment below is affirmed.