[No. 882. Decided January 5, 1894.]

JOHN WILEY et al., Appellants, v. THE CITY OF SEATTLE, Respondent.

MUNICIPAL CORPORATIONS — EMERGENCY REQUIRING EMPLOYMENT OF SPECIAL COUNSEL — LIABILITY OF CITY.

Where the mayor of a city employs special counsel to defend him in *mandamus* proceedings to require him to sign an illegal issue of bonds, for the reason that neither the legal officers nor the legislative body of the city will assist him nor procure counsel for the purpose, the city is liable for the services of the special counsel so employed by the mayor, although the employment of such special counsel may be contrary to the provisions of the charter. (ANDERS and HOYT, JJ., dissent.)

*Appeal from Superior Court, King County.*

*Wiley & Bostwick*, for appellants.

*George Donworth*, and *James B. Howe*, for respondent.

The opinion of the court was delivered by

STILES, J. — Appellants suffered a non-suit in an action which they brought against the respondent for the services which they rendered, as attorneys for the defendant, in the case of *Chalk v. White, Mayor, etc.*, 4 Wash. 156 (29 Pac. Rep. 979).

Their offers of proof were to the effect that after the mayor had vetoed the ordinance authorizing the issuance of the illegal bonds, it was passed by the unanimous vote of both of the bodies which constitute the legislative authority of the city, under the advice of the corporation counsel that such action was within their power; and that when he was served with the alternative writ of *mandamus* requiring him to sign the bonds, the mayor applied to the corporation counsel to defend him in the action, and was refused on the ground of the opinion he had given the

council, because he believed his advice was right, and because he could not honorably at that time, and under such circumstances, take the other side. This refusal and these reasons were put in writing and delivered to the mayor, and the counsel also refused to permit any of his assistants to act for the defense. The mayor then canvassed the members of both houses of the council and found them unwilling to act favorably upon any ordinance which might be proposed looking to the employment of special counsel, and thereupon took his own course, and secured the successful services of the appellants. But, notwithstanding the result of the case, the auditing powers of the city would allow no compensation for the services rendered, or return of money expended, and hence this suit.

The ruling of the court below on the motion for a nonsuit was based upon the stringent language of the charter of the city, and the general rule of municipal corporations that where the manner of exercising a power conferred upon a corporate agent is laid down in terms, his action, in order to be legal, must be taken in strict conformity to the mode thus prescribed. *Arnott v. Spokane*, 6 Wash. 442 (33 Pac. Rep. 1063).

It is evident from the general tenor of this charter (freeholders', 1890) that it was the endeavor of its framers to require authority for every sort of expenditure to emanate from some legally constituted source, and in a formal and unmistakable way. In fact, a charter could hardly be conceived that would be more mandatory in its restrictions upon municipal officers. A corporation counsel was included among the officers of the city, whose duty it was, among others, to defend all actions and proceedings to which the city or any officer, board or department of the city should be a party, or in which the rights or interests of the city should be involved; and by an ordinance this officer could be allowed to employ one or more assistants.

The council would also have authority, under the general powers conferred upon it, and with the concurrence of the mayor, to employ such special counsel in particular cases as it should deem necessary.

But on this subject there was this provision: "No office shall be created, nor shall any person be employed *in any capacity* . . . unless the same is specially provided or authorized by law or this charter." Nothing could be imagined that would more completely tie the hands of an officer in the matter of employing counsel than this provision. It was the council's manifest duty, notwithstanding its hostility to the mayor's position, to provide him legal assistance, when the attitude of the corporation counsel was made apparent; but it could not be controlled in the matter, and it would undoubtedly have refused. The mayor was then in this position: The constitution, the statute law and the charter itself forbade him to sign the bonds or do anything towards putting them in circulation, and under the solemnity of his official oath he was bound to obey; but on the other hand, the ordinance passed over his veto by unanimous votes, and the alternative writ of *mandamus* from the court commanded him to proceed. It was a most important case, involving the city's liability for more than seven hundred thousand dollars, which no man in official position ought to be required to submit to a court without legal assistance. He could neither stand still, advance nor retreat without peril; and yet the charter laid upon him the express duty to see that all laws and ordinances in force in the city were faithfully executed under penalty of removal from his office.

Respondent's counsel intimate that, under the circumstances, the mayor had such a personal interest in the defense of the action brought against him that he should have himself employed the necessary assistance; but there is equally as strong an implication that he was not expected

to do any such thing in the provision that the corporation counsel shall defend the officers in all actions against them involving the interests of the city. Plainly it was the city's business that was in jeopardy in *Chalk v. White*, and if the appellant was to any extent bound to employ counsel in that case the city is bound to pay the reasonable value of the services rendered. That he was so bound we consider to be demonstrated by the success of the defense, which proved the correctness of his position, and saved the city from an immense apparent liability.

This case demonstrates that there is, as in the nature of things there must be, such a thing as an emergency in the affairs of a municipal corporation, as well as in those of private corporations and individuals, for which neither laws, charters nor ordinances expressly provide. We venture that it was never contemplated by the framers of this charter that any such a condition of affairs as was developed in this case would occur, where both the legislative and the judicial departments of the city would be arrayed against its chief executive to compel him to perform an illegal and unconstitutional act; and if it had been intended by the charter to cover such a case, then the answer to that proposition would be that municipal corporations are not clothed by the constitution or the laws with power, either directly through their charters or ordinances or indirectly through the failure or refusal of their officers to act, to prevent the honest and proper efforts of an executive officer to avoid a plain violation of the general law.

This corporation is the creature of the state and must exist whether its people will or not, if the law of its creation is a valid law. But suppose some individual should make a direct attack upon its existence, and seek through judicial action a judgment that it was no corporation, and the same departments which opposed the mayor in *Chalk v. White* should take the position that the plaintiff was

right and ought to have judgment; the mayor in that case would be in a far less responsible position than he was in the bond case, yet if he should employ counsel and defeat the action, it would be a strange thing, indeed, if the cost of that defense could not be recovered from the city whose duty it was, under the law, to make it.

But the case supposed is no stronger than the one before us. Paramount laws were to be upheld and a paramount duty lay upon the city to uphold them. The city, violating its own self-made charter, in its corporate capacity failed to respond to the duty imposed upon it, but the officer whom it had employed and sworn to be its faithful agent in such cases, performed his part with the only means available, and his authority to employ those means in the emergency must be conceded. To hold otherwise would be to let chaos rule, since officers are under no legal obligation to defend suits of this kind at their own expense, their patriotism not being a fund upon which municipal corporations have a right to draw for such purposes.

The rule of law above alluded to, that when the mode in which a municipal corporation may contract is specially and plainly prescribed and limited, that mode is exclusive and must be pursued or the contract will not bind the corporation, is firmly settled, and is supported by almost universal authority. Dillon, Mun. Corp. (4th ed.), § 449, and cases cited in note 2. But none of the cases cited to our attention by the respondent reach the point that is in issue here. *Butler v. City of Charlestown*, 7 Gray, 12, came nearest to it; but in that case it did not appear that there was any unwillingness on the part of the corporation to furnish the aldermen who resisted an unconstitutional law with legal assistance; on the contrary, the case was rested upon what was assumed to be a custom of the city to permit committees and officers to make such contracts; and there was no responsibility resting upon the aldermen

to make any resistance to annexation of Charlestown to Boston.

Two recent cases are cited by the appellants, however, one of which is practically on all-fours with the case at bar: *Barnert v. Paterson*, 48 N. J. Law, 395 (6 Atl. Rep. 15), and *City of Louisville v. Murphy*, 86 Ky. 53 (5 S. W. Rep. 194); and in both cases the right of the mayor to employ counsel in such emergencies was upheld. In the former case the mayor successfully resisted an attempt to compel him to sign illegal bonds; in the latter he sought to enjoin the collection of an alleged illegal tax.

We think the case before us presents as strong a case of emergency as could be made, and that the appellants were entitled to make their proofs and have judgment for what their services were reasonably worth, as well as their necessary disbursements.

Judgment reversed, and cause remanded for a new trial.

DUNBAR, C. J., and SCOTT, J., concur.

ANDERS and HOYT, JJ., dissent.