SMEDLEY *v.* CITY OF GRAND HAVEN.

1. ATTORNEYS—LEGAL SERVICES—ARGUMENT IN SUPREME COURT.
    The fact that the files in a certain suit were returned to the Supreme Court on *certiorari* to review the proceedings of the circuit court in another suit closely related to it, and were made the basis of argument in the latter suit, does not entitle the attorney therein to maintain a claim as for services rendered in the Supreme Court in the former suit.

2. MUNICIPAL CORPORATIONS—CONTRACT BY MAYOR—NONCONSENT OF COUNCIL—EMERGENCY—ATTORNEY'S FEES.
    Whether such an emergency existed as would justify the mayor of a city in employing legal counsel without the consent of

the city council, so as to render the city liable for his services, was a question for the jury, where the services were sought to aid the mayor in his defense of *mandamus* proceedings instituted by certain members of the council, under the advice of the city attorney, to set aside the mayor's action in voting on a proposition, on which the councilmen were equally divided, to reimburse counsel for services theretofore rendered in a suit wherein the mayor and city attorney, each supported by one-half the council, had assumed antagonistic positions relative to the right of the council to transfer certain funds, and in which the mayor had been sustained.

Error to Ottawa; Padgham, J. Submitted October 10, 1900. Decided December 31, 1900.

*Assumpsit* by Charles O. Smedley and Benn M. Corwin, copartners as Smedley & Corwin, against the city of Grand Haven, for professional services. From a judgment for defendant on verdict directed by the court, plaintiffs bring error. Reversed.

*Smedley & Corwin, in pro. per.*

*Walter I. Lillie,* for appellee.

LONG, J. This is an action of *assumpsit* to recover for legal services claimed to have been performed by Charles O. Smedley for the city of Grand Haven, and such claim assigned to plaintiffs. The case was tried before a jury, who returned a verdict of no cause of action, by direction of the court. The bill of particulars is set out in the record. About $130 of the claim is for services rendered the city in the case of *Bishop* v. *Baar*, mayor of defendant city, in the circuit court for the county of Ottawa. The balance of the claim is for legal services rendered by Mr. Smedley in this court, the two claims amounting to $340.42.

It appears that the council of defendant city attempted, by resolution, to transfer certain of the city moneys from one fund to another. The mayor prepared a veto message, and the clerk refused to file the same, claiming that it

came too late into his hands to be effective. *Mandamus* proceedings were commenced in the circuit court to compel the clerk to file it. The case was ruled in the circuit court against the mayor, and was removed by the mayor to this court. Mr. Smedley was employed by the mayor to represent him in that case, both in the circuit court and in this court. The order of the circuit court was reversed in this court. *Baar* v. *Kirby*, 118 Mich. 392 (76 N. W. 754). The mayor, at the time of filing the petition for *mandamus* in that case in the circuit court, also filed another petition for *mandamus* against the city council. That case was decided in favor of the mayor, and the case ended in that court. After the decision in this court of *Baar* v. *Kirby*, *supra*, Mr. Smedley presented his bills to the common council of the city for such legal services in the two cases,—one, *Baar* v. *Kirby;* and the other, *Baar* v. *Common Council.* These bills were referred to the finance committee, to which committee was added the city attorney. The committee recommended to the council that an order be drawn on the contingent fund in favor of the mayor to repay him for the taxed costs in the *Kirby Case*, $37.80, and for all other legal expenses $50, making a total of $87.80, and that nothing be allowed Mr. Smedley for legal services. When this recommendation was read to the council, one of the aldermen moved that the mayor be allowed $349.50 with which to pay his attorney's fees in his *mandamus* case against the clerk. The vote was a tie in the council, and the mayor then voted in the affirmative, thus carrying the motion. Proceedings were then commenced against the mayor by four of the aldermen to compel him to determine that the motion had not been carried, claiming that he had no legal right to vote on the question. That case is entitled *Bishop* v. *Baar.* Upon the coming in of the answer to the order to show cause in that case in the circuit court, issues of fact were framed, and testimony was taken thereunder. A *mandamus* was issued from the circuit court in the case, setting aside the action of the mayor in voting on said bills. In the mean-

time the clerk of the council was instructed by the four aldermen and the city attorney not to draw a warrant for the amount of the bills so allowed at $349.50. Mr. Smedley thereupon commenced *mandamus* proceedings against the clerk to compel him to issue the warrant for the amount of the claims allowed. That case was determined in the circuit court against Mr. Smedley. He removed the same to this court by *certiorari*, and the case was here reversed, and the *mandamus* issued to compel the clerk to sign the warrant for the claim as allowed by the four aldermen and the mayor voting thereon. *Smedley* v. *Kirby*, 120 Mich. 253 (79 N. W. 187). When the return was made by the circuit court to the writ of *certiorari* in *Smedley* v. *Kirby*, there were sent with the return all the files and proceedings in the case of *Bishop* v. *Baar*, though that case was never removed to this court. That case is referred to in *Smedley* v. *Kirby*. The clerk issued the warrant for the $349.50, and the same has been paid. It appears that during all these proceedings the city attorney was antagonistic to the mayor. He appeared as counsel in every proceeding in the circuit court and in this court in opposition to the mayor. It was under his advice as a member of the finance committee that the council refused to allow the account in favor of the mayor. At the close of the testimony in the present case the court directed the verdict in favor of the defendant.

We have set out very fully the facts in the case upon which the legal questions are raised. The testimony shows, as stated by the court below, that there was no concurrence by the common council with the action of the mayor in the employment of Mr. Smedley, except that the mayor spoke to them individually about such employment, and they said it was all right. It is also shown, as stated by the court, that the case of *Bishop* v. *Baar* was not appealed to this court; but it does appear that, when the circuit court made a return to the *certiorari* in *Smedley* v. *Kirby*, he returned all the proceedings had before him in *Bishop* v. *Baar*. The claim of the plain-

tiffs in the present case is for services in *Bishop* v. *Baar* in the circuit court and in this court. Plaintiffs, in their bill of particulars, treat the case of *Bishop* v. *Baar* as for argument in this court. That case was not in this court, and the court below was not in error in holding that the plaintiffs could not charge for that. As was said by the court below, Mr. Smedley used it only in support of his own case of *Smedley* v. *Kirby*. He has been paid in that case, and must rest satisfied with his taxable costs of both courts in the case.

The question remains as to the claim for services in *Bishop* v. *Baar* in the circuit court. The charter of the city of Grand Haven provides, by chapter 8, § 20 (Act No. 215, Pub. Acts 1895), that:

"The council shall audit and allow all accounts chargeable against the city; but no account or claim or contract shall be received for audit or allowance unless it shall be accompanied with a certificate of an officer of the corporation, or an affidavit of the person rendering it, to the effect that he verily believes that the services therein charged have been actually performed or the property delivered for the city. * * * It shall be a sufficient defense in any court to any action or proceeding for the collection of any demand or claim against the city, for personal injuries or otherwise, that it has never been presented, certified to or verified as aforesaid, to the council for allowance; or, if such claim is founded on contract, that the same was presented without the affidavit or certificate as aforesaid, and rejected for that reason; or that the action or proceeding was brought before the council had a reasonable time to investigate and pass upon it."

The court refers to this charter, and says: "If a debt is to be contracted against the city in any way, it must come through the power of the common council." It is admitted by the learned judge that there are certain exceptions to this rule, as where an emergency or exigency might arise which would compel the mayor to act without the sanction of the council in order to protect the rights of the city; but the court was of the opinion that no such exigency was shown to exist in the present case. No point is made by the

court below, or by counsel for the city, that the account was not certified as required by the above provisions of the charter.

The only question presented is whether there was any exigency arising in the case which called upon the mayor to act without reference to any formal action by the council. The city attorney was employed against the mayor in all the cases, and in fact was active against him in all the matters coming before the council pertaining to the transfer of the funds, the veto message, the bringing of the *mandamus* proceedings, as well as in advice to the council not to pay the costs and expenses in the suits. We think it was a question for the jury to determine whether any exigency existed which warranted the mayor in employing counsel under such circumstances. The charter of the city, by section 1, chap. 7, provides that the mayor shall be the chief executive officer of the city, and "it shall be his duty to exercise supervision over the several departments of the city government, see that the laws relating to the city, and the ordinances and regulations of the council, are enforced." The mayor found that the council, by resolution, had violated the provisions of section 22, chap. 30, of the charter, which provides that:

"All moneys and taxes raised, loaned, or appropriated for the purposes of any particular fund shall be paid in and credited to such fund, and shall be applied to the purposes for which such moneys were raised and received, and to none other; nor shall the moneys belonging to one fund be transferred to any other fund, or be applied to any purpose for which such other fund is constituted," etc.

In the face of this provision, the council attempted by resolution to transfer $7,000 from the contingent to the several city funds. His attempt to veto this action was opposed by four of the aldermen and the city attorney, acting with them, and they sought to defeat the veto message on the ground that it was not filed in time.

It appears in the case of *Barnert* v. *Mayor, etc., of*

*Paterson,* 48 N. J. Law, 395 (6 Atl. 15), an action was brought by the mayor of the city of Paterson to recover moneys expended by him in employing legal counsel in defending a *mandamus* suit brought by the city against him. The mayor was successful in the *mandamus* case. It was said by the court:

"If he was right in his judgment, the city should have furnished him the aid of proper counsel. But the official law officer was in court against him, and the city authorities, to whom ordinarily he should have applied, were the real actors in the proceeding against him. It would, under these circumstances, have been idle to make the application. Ordinarily his duty would have ended with an unsuccessful application to the official counsel, or, if the city counsel were not available, then by application to the appropriate authority to furnish other counsel; but he could expect aid from neither source in the existing situation. He was chargeable with the knowledge of his official duty, and was called upon then to decide what was the course of action which that duty demanded of him. The risk of decision was upon him. If he erred in judgment as to his legal duty in resisting the proceeding, he must, on demanding to be reimbursed his outlay, have stood as a mere volunteer, and borne the direct consequences of defeat. The judgment of the court which the parties invoked vindicated his decision, and found him acting in obedience to the commands of the charter."

The above case was quoted with approval in *Wiley* v. *City of Seattle,* 7 Wash. 576 (35 Pac. 415, 38 Am. St. Rep. 905).

In *City of Louisville* v. *Murphy,* 86 Ky. 53 (5 S. W. 194), an action was brought by the mayor of the city to restrain the collection of a claimed illegal tax. The council did not move in the matter, and the city attorney took no steps in it. In this emergency the mayor employed counsel, and the court sustained his claim. It was held that the mayor had the right to do this, under such circumstances, and that the city was liable for the expenses of counsel and attorney fees.

Plaintiffs asked the court to charge the jury that if they

found, under the circumstances shown, that the mayor was justified in the employment of counsel to represent him in these cases, the verdict should be for plaintiffs. This was refused, and the court directed the jury to return a verdict for defendant. This charge was erroneous. The jury should have been instructed that, if they found such an emergency existed, the only question left for determination was the amount to which plaintiffs were entitled in the case of *Bishop* v. *Baar* in the circuit court.

The judgment must be reversed, and a new trial granted.

The other Justices concurred.