CITY OF WARREN v DANNIS

Docket No. 73218. Submitted July 9, 1984, at Detroit.—Decided
August 20, 1984. Leave to appeal applied for.

Following her election to the Office of Treasurer of the City of
Warren, defendant, L. Klimecki Dannis, proceeded to make
investments with city funds which were outside of the guide-
lines adopted for such investments by the Warren City Council.
Defendant also refused to pay some obligations which had been
authorized by the city council. Thereafter, the Michigan Attor-
ney General and the Warren City Attorney both clearly opined
that the city council alone had the authority to decide where
city monies were to be invested. The defendant disagreed with
their legal opinions and asked the city council if it would
provide an attorney for her if the matter were litigated as the
city proposed. The city council said that it would consider the
matter on May 13, 1980. On May 7, 1980, the plaintiffs, City of
Warren and the Warren City Council, commenced a mandamus
action in the Macomb Circuit Court and had an order to show
cause issued against the defendant for hearing on May 12,
1980. On that day the hearing was adjourned at plaintiffs'
request. On May 13, 1980, the council denied the defendant
monies for an attorney. She then retained as her attorneys a
law firm which she had already consulted as to what her
charter responsibilities were. Thereafter the show cause was
dismissed by the plaintiffs, the resolution which set investment
guidelines was converted to a city ordinance and the plaintiffs
amended their complaint to ask for a declaratory judgment. On
the motion of the plaintiffs for summary jdugment, the trial
court, Kenneth N. Sanborn, J., concluded that the city council
had the authority to impose limitations on the investment of

REFERENCES FOR POINTS IN HEADNOTES
[1] 56 Am Jur 2d, Municipal Corporation, Counties, and Other Politi-
cal Subdivisions § 283.
[2] 73 Am Jur 2d, Statutes § 160.
[3] 2 Am Jur 2d, Administrative Law § 233 *et seq.*
[4, 5, 7] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
Political Subdivisions § 208.
[6] 45 Am Jur 2d, Interest and Usury §§ 59, 60.

city funds and that the treasurer's duties relative to investments and the releasing of checks to cover council appropriations were purely ministerial. The defendant then sought to be reimbursed for the attorney fees of her privately retained attorneys. The trial court directed a verdict on liability for the attorney fees in favor of the defendant and the jury awarded the amount billed of $47,788.66. The trial court refused to add interest thereto. The plaintiffs appeal from the directed verdict of liability for the attorney fees. The defendant appeals from the finding as to the council's authority to impose limitations on her investment of city funds and from the trial court's failure to award interest on the jury award. *Held:*

1. The fact that the city's treasurers determined the investment policy for many years without objection from the city council does not establish the right to do so if the city charter or state statutes are to the contrary. The Warren City Charter invests the city council, not the treasurer, with the power to determine what kind of investments can be made. The trial court properly determined that such power rested with the city council pursuant to the city charter and pertinent state statute.

2. The trial court properly determined that the city treasurer did not have the authority to refuse to sign checks to pay debts when the disbursements had been duly authorized by the city council.

3. A public official who acts arbitrarily, completely without good faith in a dogmatic, unreasonable manner, clearly contrary to the dictates of his official responsibilities under statute, charter or ordinance, should not be able to recover attorney fee reimbursement after he loses a lawsuit relating to such action. Here, the treasurer was clearly acting in her official capacity and was performing what she firmly believed was an obligation required of her by the city charter. Here, there was a good-faith disagreement over an issue which was not an open and shut issue. The record does not indicate such arbitrary and unreasonable posturing by the treasurer as to deny her the right to indemnification. The trial court properly determined that the treasurer should be indemnified.

4. This action for indemnification was an equitable action for reimbursement. The trial court did not abuse its discretion in finding that the treasurer really lost no use of the money as basically it was money due her attorneys for their fees and not money due the defendant. Interest on the jury award was, therefore, properly denied.

Affirmed.

1. MUNICIPAL CORPORATIONS — INVESTMENT OF SURPLUS FUNDS.

The governing body of a city may, by resolution, authorize its treasurer to invest surplus funds belonging to and under the control of the city (MCL 129.91; MSA 3.843[1]).

2. STATUTES — JUDICIAL CONSTRUCTION.

Courts, in interpreting an ambiguous law, may take note of and rely upon the practical construction given to the law.

3. STATUTES — JUDICIAL CONSTRUCTION — ADMINISTRATIVE LAW.

The principle that a long-standing interpretation of a statute by the agency which administers it is entitled to great weight does not control the interpretation of the statute when the interpretation by the agency is clearly wrong.

4. MUNICIPAL CORPORATIONS — PUBLIC OFFICIALS — ATTORNEY FEES.

A public official who acts arbitrarily, completely without good faith in a dogmatic, unreasonable manner, and clearly contrary to the dictates of his official responsibilities under statute, charter or ordinance, should not be able to recover attorney fee reimbursement from his public employer after he loses a lawsuit resulting from such acts.

5. MUNICIPAL CORPORATIONS — PUBLIC OFFICIALS — ATTORNEY FEES.

Good faith and reasonableness of a public official's actions are proper elements to consider in determining whether the official should be indemnified for attorney fees incurred to assist in the performance of official duties.

6. JUDGMENTS — MONEY JUDGMENTS — INTEREST.

An award of interest on a money judgment is mandatory; a money judgment is one which adjudges the payment of a sum of money as distinguished from directing an act to be done.

7. MUNICIPAL CORPORATIONS — PUBLIC OFFICIALS — ATTORNEY FEES — EQUITY — INDEMNITY — REIMBURSEMENT.

An action by a public official for indemnification for attorney fees incurred to assist in the performance of his official duties is an equitable action for reimbursement.

*Miller, Canfield, Paddock & Stone* (by *David Olmstead, Cynthia B. Faulhaber, Stefan B. Herpel* and *Stephen J. Ott)*, of counsel, for plaintiffs.

*Bodman, Longley & Dahling* (by *Joseph A. Sulli-*

*van, James J. Walsh* and *Robert J. Diehl, Jr.),* for defendant.

Before: BEASLEY, P.J., and J. H. GILLIS and R. B. MARTIN,* JJ.

R. B. MARTIN, J. The particular facts in this case are important in deciding the issues involved. Warren is a home-rule city and for a number of years its treasurers, without any objection from the city council, determined what investments should be made with temporarily surplus city funds. Finally one treasurer made some extremely questionable and completely inappropriate investments which ended in the city's losing large sums of money. Fortunately for the city, these losses were repaid by the brokerage house that handled the improper financial transactions. The state and bonding authorities were aghast and steps were taken to prevent the recurrence of investments of this nature.

The city council then adopted an investment policy with the concurrence of the defendant who was then a council member. When the defendant was elected treasurer, she made it clear that she would follow the policy guidelines only insofar as they did not interfere with the powers and duties imposed by statute and charter on the Office of Treasurer. She then proceeded to make investments obviously outside the guidelines. She also took it upon herself to refuse to pay some obligations authorized by the city council.

The city attorney and the attorney general both clearly opined that the city council alone had the authority to decide where city monies were to be

---

* Former circuit judge, sitting on the Court of Appeals by assignment.

invested. The defendant looked at the city charter and the long history of the treasurers making such determinations and decided she disagreed with their legal opinions. On April 29, 1980, she asked the council if it would provide an attorney for her if the matter were litigated as the city proposed. The council said it would consider the matter on May 13 after proper notice.

On May 7, 1980, the city and the city council commenced a mandamus action in circuit court and had an order to show cause issued against the defendant for hearing on May 12, 1980. On that day the hearing was adjourned at plaintiffs' request. On May 13, 1980, the council denied the defendant monies for an attorney. She thereupon retained the law firm which she had already consulted as to what her charter responsibilities were. Thereafter, the show cause was dismissed by the plaintiffs, the resolution setting the guidelines was converted to a city ordinance, and the plaintiffs amended their complaint to ask for a declaratory judgment. On the motion of the plaintiffs for summary judgment, the trial court concluded that the council had authority to impose limitations on the investment of city funds and that the treasurer's duties relative to investments and the releasing of checks to cover council appropriations were purely ministerial.

Thereafter, the defendant asked the city for attorney fees to reimburse her privately retained attorneys. After five days of trial the court directed a verdict of liability for attorney fees and the jury awarded the amount billed of $47,788.66. The trial court refused to add interest thereto.

The plaintiffs appeal from the directing of a verdict of liability for attorney fees. The defendant appeals from the failure to grant investment re-

sponsibilities to her office and a failure to award interest.

We affirm the trial court in all respects.

Relative to investment responsibilities, the defendant relies on § 7.12(c) of the city charter and the long history of its interpretation by usage to permit the treasurer to decide matters of investment. Section 7.12 of the city charter provides in pertinent part:

"(b) [The treasurer] shall receive all moneys belonging to and receivable by the city, that may be collected by any official or employee, including license fees, taxes, assessments, and all other charges belonging to and payable to the city and also moneys available to the city from the state, county, or federal government, or any court, and shall have custody of all public funds belonging to or under the control of the city. He shall deposit all such funds in such depositories as may be designated by the council in accordance with law and shall pay no money out of the treasury, except pursuant to authority of the council signed by the secretary of the council and countersigned by the controller.

"(c) He shall have custody of all investments and invested funds of the city or in its possession in a fiduciary capacity and shall have and be responsible for the safekeeping of all bonds and notes of the city and for the receipt and delivery of city bonds and notes for transfer, registration, or exchange."

These sections in effect make the treasurer the custodian of funds and investments. That officer keeps the passbooks, the checks, the CDs, the bonds, and other memorabilia of investments, but the officer does not have the power to determine which kind of investments can be made. That is determined by the city council under § 3.1(b):

"The city shall have power to manage and control the

finances, rights, interests, buildings, and property, to enter into contracts, to do any act to advance the interests, good government, and prosperity of the city and its inhabitants, and to protect the public peace, morals, health, safety, and general welfare. In the exercise of such powers, the city may enact ordinances, rules, and regulations, and take such other action as may be required, not inconsistent with law."

Generally, the authority of the city to invest public funds is set forth in MCL 129.91; MSA 3.843(1):

"The legislative or governing body of a county, city, * * * by resolution, may authorize its treasurer * * * to invest surplus funds belonging to and under the control of the political subdivision * * *."

Thereafter follows the type of investments the legislative body may authorize the treasurer to invest in.

Courts, in interpreting ambiguous laws, do take note of and often rely on the practical construction given to those laws. *Union School Dist of Owosso v Goodrich,* 208 Mich 646; 175 NW 1009 (1920); *Magreta v Ambassador Steel Co (On Rehearing),* 380 Mich 513; 158 NW2d 473 (1968). However, the fact that the treasurer determined the investment policy for many years without objection from the city council does not establish the right to do so if the charter or statute are to the contrary. In *Murphy v Michigan,* 418 Mich 341, 348; 343 NW2d 177 (1984), the Court said:

"The principle that a long-standing interpretation of a statute by the agency which administers it is entitled to great weight does not control when the interpretation is clearly wrong. *Schuhknecht v State Plumbing Board,* 277 Mich 183, 186-187; 269 NW 136 (1936)."

Did the treasurer have the right to refuse to sign checks to pay debts when the disbursements had been duly authorized by the city council?

The answer is "no". The city charter granted the city attorney the authority to review the validity of council action. Section 7.10(a), subds (3) and (4) of the charter stated those duties:

> "(3) Prosecuting charter and ordinance violations and conducting such cases in court and before other legally constituted tribunals as the council may direct;
>
> "(4) Preparing or reviewing all ordinances, contracts, bonds, and other written instruments which are submitted by the council or by the officers and boards in matters of legal nature relating to the affairs of the city."

Moreover, under Chapter 7, § 7.15(5), the city controller was required to "[c]heck all proposed expenditures and, before any contract which requires the expenditure of public money shall be effective, certify to the availability of appropriated funds therefor".

Besides § 7.12(b) already quoted, the charter in § 8.8 provided:

> "Unless otherwise provided by law or by ordinance, all funds drawn from the treasury shall be drawn pursuant to the authority and appropriation of the council. The controller, where necessary to expedite operating procedures, may authorize in writing, other officers and employees of the city to make minor disbursements from petty cash accounts."

There is no section of the charter granting the treasurer the power to refuse to disburse funds as authorized by the council. The treasurer had no such authority. In issuing checks per council orders she would act in a ministerial capacity.

On the issue of the defendant's right to reimbursement of attorney fees, our appellate courts have long tried to consider the need for public officials to reasonably exercise their discretion in what they in good faith believe is the exercise of the powers and responsibilities of their office. Sometimes this requires legal advice and assistance in this modern world of ours so full of litigation. The courts have likewise been concerned with officials who obstinately in bad faith and without good reason set themselves contrary to and above the law and then require public funds for their defense. There must be a fine balance line between these positions.

We look at the principal Michigan cases. In *Smedley v Grand Haven,* 125 Mich 424; 84 NW 626 (1900), the city council tried to transfer monies from one fund to another, the mayor tried to veto it but the clerk would not file the veto. The mayor sued in mandamus to compel the clerk to file his veto. The circuit court upheld the clerk and the mayor appealed to the Supreme Court which reversed the circuit court. The mayor also sued the council in circuit court and won. The mayor then presented an attorney bill for the two cases. One alderman moved to pay the whole $349.50, the vote was tied, and the mayor voted in the affirmative to break the tie. Four councilmen then sued the mayor for an order saying he had no authority to break the tie. The circuit court agreed. In the meantime the four aldermen and the city attorney told the clerk not to pay the $349.50. The mayor's attorney then sued in mandamus to compel the clerk to pay his claim. The circuit court ruled against the mayor's attorney and the Supreme Court reversed. It has been noted that the city attorney was against the mayor in every step of all

of the lawsuits. The Supreme Court there decided that it was a question for the jury to determine whether any exigency existed which warranted the mayor in employing his counsel. It indicated that the hiring of counsel was at the mayor's own risk and that if he had been wrong in his judgments as to his legal duties he would have been found to be a mere volunteer and would have had to bear the consequences of the defeat. But since the court decisions were for him, the city had to pay.

In *Exeter Twp Clerk v Exeter Twp Bd,* 108 Mich App 262; 310 NW2d 357 (1981), the clerk thought that some nominating petitions filed with her were insufficient however she had only three days in which to certify them. She asked the township attorney and he refused to advise her unless the board agreed. Plaintiff then got her own attorney who believed the petitions were invalid. The candidates sued the clerk in circuit court and the township board refused to hire an attorney for the circuit court action. The clerk lost in the circuit court but was sustained in the Court of Appeals. The candidates asked for leave to appeal to the Supreme Court. This apparently was denied. The clerk then sought the repayment of legal fees she had expended. The Court relied on *Messmore v Kracht,* 172 Mich 120; 137 NW 549 (1912), *Smedley, supra, Barnert v Mayor of Paterson,* 48 NJL 395; 6 A 15 (1886), and *City of Louisville v Murphy,* 86 Ky 53; 5 SW 194 (1887). The Court ruled that the clerk was acting in her official capacity, she was performing a statutory obligation, the township had refused legal advice and there was an emergency situation of pressing necessity which required the assistance of counsel. We note that the *Exeter* Court did not specifically consider the question of hiring an attorney in good faith nor

did the Court use any words relative to whether or not it was reasonable to do so. The really important issue was the pressing necessity for help.

In our case the record clearly establishes that the defendant was acting in her official capacity. She, like the members of the city council, was an elected official bound to act under the guidelines of the statutes, charter, and ordinances. She was performing what she firmly believed was an obligation required of her by the charter. The city had not refused legal advice but the city attorney, selected by the mayor, was actively, diametrically opposed to her legal position. She had secured advice from a competent law firm before the city refused her permission to hire an attorney. The city obviously was in an adversary position to the defendant but still wanted the defendant to rely on her adversaries' attorney's advice. If there is a good-faith disagreement, this is hardly the way to encourage public officials to act as they honestly believe the law requires them to act in the performance of their duties.

We are a bit concerned with the fact that the attorney general's opinion indicates that the city's legislative body was authorized to direct the treasurer in the investment of funds. The defendant knew of this opinion before her adamant refusal to follow the city's resolution relative to guidelines. We do note, of course, that the attorney general's opinion does not necessarily bind city treasurers or courts of record. In addition, the question asked of the attorney general was, "Does the action of the Warren City Council in establishing an Investment Policy Committee amount to an illegal delegation of power under the Warren City Charter, Section 7.12?" He was, therefore, directly concerned with an issue not germane to this lawsuit. The trea-

surer was not necessarily bound to follow this opinion.

*Exeter* did not raise the question of whether good faith and reasonableness of action on behalf of the public official were necessary before the official would be entitled to reimbursement of attorney fees. It was abundantly evident in that case that the clerk acted reasonably and in good faith in hiring an attorney to assist her. Those elements were not in issue. We believe that a public official who acts arbitrarily, completely without good faith in a dogmatic, unreasonable manner, clearly contrary to the dictates of his official responsibilities under statute, charter or ordinance, certainly shouldn't be able to recover attorney fee reimbusement after he loses his lawsuit. *Smedley* hints at this.

In our case, those issues really weren't raised on this appeal, but good faith and the reasonableness of a public official's actions are proper elements to consider in determining whether the official should be indemnified for attorney fees incurred to assist in the performance of official duties. Here the record speaks of great antagonism between the council and the treasurer but it does not indicate such arbitrary and unreasonable posturing by the treasurer as to deny her the right of indemnification. We note that there are Michigan appellate cases which seem to support her position relative to the investments of money. It was not an open and shut issue.

Should interest be added to the judgment? An award of interest on a money judgment is mandatory. *State Highway Comm v Great Lakes Express Co,* 50 Mich App 170; 213 NW2d 239 (1973). A money judgment is one which adjudges the payment of a sum of money as distinguished from

directing an act to be done. *Oliver v Dep't of State Police,* 132 Mich App 558; 349 NW2d 211 (1984); *Moore v Carney,* 84 Mich App 399; 269 NW2d 614 (1978). This type of action for indemnification has been characterized as an equitable action for reimbursement. *Exeter, supra.* See also 41 Am Jur 2d, Indemnity, § 2, p 688. It was not an abuse of discretion for the trial court to find that the defendant really lost no use of the money as basically it was money due her attorneys for their fees and not money due the defendant.

Under the facts of this case we affirm.