(No. 6805.    January 29, 1941.)

THE CITY OF NAMPA, a municipal corporation, et al., Respondents, v. FRANK F. KIBLER, Appellant.

[113 Pac. (2d) 411.]

ON REHEARING MAY 20, 1941.

George H. van de Steeg, for Appellant.

V. K. Jeppesen, for Respondents.

C. Stanley Skiles, Amicus Curiae on rehearing.

AILSHIE, J.—In this cause a declaratory judgment was sought by respondent, City of Nampa, and its officials, authorizing them to pay, out of the public moneys of the city, certain claims incurred by Willard Harris and B. P. MacArthur, city police officers, for attorney's fees, together with fees for witnesses, and other costs incurred, in defending the cases of *Cornell v. Harris,* 60 Ida. 87, and *Cornell v. MacArthur,* which was dismissed in the trial court.

The cause was tried to the court without a jury. Among the exhibits introduced in the case were the following: Exhibit 21, Ordinance No. 524, passed July 17, 1939, by the council of the City of Nampa and approved by the mayor, levying taxes for the fiscal year beginning with the first Tuesday of May, 1939, "for general municipal purposes, . . . and other incidental expenses; . . . " Exhibit 22 is a letter, addressed to the mayor and city clerk, by appellant, registering a protest against

"payment of certain appropriation items designated to reimburse and pay one B. P. *Mc*Arthur and Willard Harris, former police officers, for purported expenses incurred by said officers in the defense of legal proceedings brought against said officers by Ben and Kalta Cornell, on account of alleged unjustifiable assault and battery on the part of said officers."

The trial court entered its conclusions of law, to the effect that the city has the legal right and authority to pay Harris $554.15 and MacArthur $150, in reimburse-

ment for the expenses incurred in their defense, and has the right to raise funds by taxation for such purposes; that plaintiff city be directed and ordered to pay the amounts. Judgment was entered accordingly, from which judgment defendant has appealed.

Appellant contends that the city is not liable for, nor is it permitted to pay out of the public funds, attorney's fees, costs and expenses incurred by these police officers, in defending themselves against the *charge of committing a battery* in discharge of their official duties. Appellant relies on the provisions of sec. 4, art. 8 of the constitution, which provides:

Sec. 4, Art. 8, Const.

"No county, city, ... shall lend, or pledge the credit or faith thereof directly or indirectly, in any manner, to, or in aid of any individual, ... for any amount or for any purpose whatever, or become responsible for any debt, contract or liability of any individual, association or corporation in or out of this state."

Sec. 49-1714, I. C. A., provides in part as follows:

"The city councils of cities ... shall, within the first quarter of each fiscal year, pass an ordinance to be termed the annual appropriation bill, in which such corporate authorities may appropriate such sum or sums of money as may be deemed necessary to defray all necessary expenses and liabilities of such corporation, ... "

We find from the record that defendants Harris and MacArthur were charged by the Cornells with the commission of battery on them. The city was not a party to the cases.

Now it is well settled that the wrongful and unlawful commission of a battery by a peace officer is outside of and beyond his powers and duties as a public officer. McQuillin, in his treatise on Municipal Corporations, says:

"Except where otherwise provided by statute, it is well settled that a municipal corporation is not liable for the torts of its policemen, although they are appointed or elected by the city or town, and although the act of the police officer was done in an attempt to enforce a municipal ordinance rather than a statute. So the fact that the

incompetency of the offending policeman was known to the municipal authorities is immaterial." (6 McQuillin, Munic. Corp., (2d ed.) sec. 2591, p. 525.) His duty is to *execute,* not *violate,* the law.

In the annotation to *Gillmor v. Salt Lake City,* as reported in 12 L. R. A., (N. S.) at p. 537, it is said:

"In municipal-corporation law no propositions are more thoroughly established than that police officers are not agents or servants of the municipality employing them, so as to render it responsible for their negligent or illegal acts in discharge of their duties as such officers. These duties do not lie in the line of the special privileges of a municipal corporation as such; they are not imposed for the purpose of promoting the private interests of municipalities in their special corporate rights. These duties are of a public nature, and such as the state itself is interested in."

In *Miller v. Hastings Borough,* 25 Pa. Super. 569, at 571 (a case in some respects similar to the one at bar), the Pennsylvania court said:

"The plaintiff was prosecuted not as an officer but as an individual, for a breach of the criminal law; and from this his office could not shield him. It was his duty to enforce the ordinances of the borough, but not to the extent of violating the law himself, and we must infer from the verdict that his conduct in that matter was not above suspicion." (See 2 Dillon, (3d ed.) sec. 147.)

Any one may be sued, whether a public officer or employee, or a private citizen; he may be charged with any kind of commission or omission, and in such case he must defend himself, whether the action be meritorious or groundless. Though it be an unjust burden on one so required to defend an action, it is nevertheless *his burden* and *his obligation,* whether he be private citizen or public official or employee. On the other hand, it is sometimes true that a public officer or employee is made a *party defendant* to an action or proceeding in which he has been acting solely under the direction of a municipal or quasi-municipal corporation, wherein the real relief sought is against the municipality; and the act or omission complained of has really been the act of the municipality

itself. In such cases it is almost uniformly held that the municipality is liable to meet the expenses incurred in defense of the action.

In *Eldridge v. Black Canyon Irr. Dist.*, 55 Ida. 443, 447, this court discussed a related issue and quoted with apparent approval from the North Carolina case of *Munick v. Durham,* 24 A. L. R. 538, as follows:

"The distinction is very broad and clear and is settled by all the authorities substantially as follows: Wherever a city is exercising a governmental function or police power, it is not responsible for the torts or negligence of its officers, in the absence of a statute imposing such liability; but when it is acting in its business capacity, as in operating a water or lighting plant, or other business function, it is liable for the conduct of its agents and servants exactly to the same extent that any other business corporation would be liable under the same circumstances." (*State v. Parsons,* 58 Ida. 787; supporting the same principle, see *Normington v. Neeley,* 58 Ida. 134, 140.)

The defense of police officers charged with the commission of either tortious or criminal acts is not a proper or necessary municipal expense. (See *Citizens' Sav. & Loan Assn. v. Topeka,* 22 L. Ed. (U. S.) 455.) As above suggested, however, there are cases where the acts are so closely related to the discharge of a purely business function of the municipality as to render it a corporate act.

There is another very sound objection to allowing a claim of this kind to be collected from the city, i. e., to do so would amount to licensing police officers to roughly handle prisoners or their relatives or friends, who call to see them, in that it would assure such officers that the municipality would pay the bill, if any, for their defense. Furthermore, sec. 49-1807, I. C. A., provides for the appointment of a city attorney and prescribes his duties as follows:

"The city or village attorney shall be the legal adviser of the council and board of trustees. He shall commence, prosecute and defend all suits and actions necessary to be commenced, prosecuted or defended on behalf of the cor-

poration, or that may be ordered by the council or board of trustees. When requested, he shall attend meetings of the council or board, and give them his opinion upon any matters submitted to him, either orally or in writing as may be required."

From the foregoing it will be seen that it was the intention of the legislature to provide for the employment of an attorney to represent cities and villages and by that means enable the municipality to have regularly, in its employ and at its service, a competent attorney to take care of all matters in which the *municipality is a party or is interested*. So it would appear in the present case that, if the police officers at the time they were sued thought it the duty of the city of Nampa to furnish counsel and defend the action, they should have notified the council and made an appropriate application to the court to have the city brought in as party defendant, and not wait until after the litigation was over and a large expense had been incurred, and then apply to the city authorities for reimbursement of the outlay. (See *Clayton v. Barnes*, 52 Ida. 418.)

It is thought that the cases of *Mills v. Stewart*, 47 A. L. R. 424, and *Veterans Welfare Board v. Riley*, 22 A. L. R. 1531, relied on by respondents, are not applicable to the case under consideration.

We conclude that the city is not liable and the judgment is accordingly reversed. Costs to appellant.

Budge, C. J., Morgan and Holden, JJ., concur.

Givens, J., concurs in the conclusion.

### ON REHEARING
### (May 20, 1941)

AILSHIE, J.—A rehearing was granted in this case and we have re-examined the grounds urged for a change of our conclusion on the case.

Mr. Stanley Skiles, city attorney of Boise, has presented a brief as amicus curiae, in which he contends that the judgment of the trial court should be affirmed, and opens his argument as follows:

"In this action it appears that the question is not whether the municipality is liable for attorney fees and court costs, which were incurred by the police officers in defending an action brought against them, but the question is whether the City Council, in its discretion, may legally pay such fees and costs if it so desires."

The answer to that contention is: The city authorities have *no discretion to give away* the public funds or pay other people's bills. On the other hand, we have not held, and do not now hold, that a city council may not, under some emergencies or necessities, employ special counsel for the performance of specific legal services pertaining to, and in the interest of, the public good and welfare. In such cases, however, the selection, employment, compensation, emergency or necessity must first be determined upon by the authorities charged with the duties of safeguarding the treasury, rather than by some interested individual who wants counsel to defend him.

The authority conferred on the city council by sec. 49-1714, I. C. A., to "appropriate such sum or sums of money as may be deemed necessary to defray all necessary expenses and liabilities" of the corporation, in no way enlarges or extends the power of the council to expend or dissipate the city funds for unauthorized claims. *Bevis v. Wright,* 31 Ida. 676, relied on by amicus curiae, raised the issue as to the constitutionality of chap. 95, p. 340, 1911 Sess. Laws, authorizing county commissioners to levy a special tax to raise a fund to prepare and maintain an exhibition of products and industries of the county. The county commissioners in that case simply acted in conformity with the authority granted, and this court held that the legislature *had the power to grant the authority.*

The case of *State v. City of St. Louis,* 73 S. W. 623, cited and relied on by respondent, involved the payment of a judgment, costs and expenses incurred in defending an action brought against a police officer for injuring a boy, while the officer was trying to shoot a mad steer running at large on the streets of the city of St. Louis. The opinion in that case in no way militates against our

holding in the case at bar. There are several matters, of both law and fact, appearing in that case which distinguish it from the case in hand. Among other things, the court held that the police officer was a *public official of both the city and the state,* under the statutes of the state of Missouri; that he was acting in co-operation with, and under the direction of, the chief of police of the city; and that an emergency existed for his immediate action.

Another case cited and relied on by respondent is the *City of Corsicana v. Babb,* (Texas Com. App.) 290 S. W. 736. That was a case where a policeman was killed while undertaking to make an arrest, and his slayers were indicted, charged with murder. The city authorities employed two lawyers to prosecute the slayers of the policeman. In that case the matter was taken up by the city council, considered and discussed, and the contracts entered into with the respective attorneys, before the service was rendered. In that case the court held that the city was

"under no duty or obligation to employ an attorney, or to indemnify the officer for the payment of his fees; but, if it do employ the attorney, the municipality becomes legally bound to pay his compensation."

The holding of that case does not militate against our holding under the facts of the present case. Here no employment was made; no necessity was declared and no contract was entered into prior to the rendition of the service.

We are not holding that a necessity or emergency could not possibly arise, justifying a city council in entering into a contract employing special counsel for legal service. On such an exigency, we express no opinion, but we do hold that, under the facts of this case, the city has no authority or discretion to disburse public funds.

The judgment heretofore rendered and entered in this court is adhered to.

Budge, C. J., Givens, Morgan and Holden, JJ., concur.