(No. 7073. February 2, 1943.)

B. H. WAIGAND, Appellant, v. CITY OF NAMPA, a municipal corporation, Respondent.

[133 Pac. (2d) 738.]

Frank F. Kibler for appellant.

Geo. H. van de Steeg and Earl E. Garrity for respondent.

HOLDEN, C.J.—Plaintiff and appellant was the duly elected, qualified and acting mayor of the City of Nampa. July 23, 1941, during his absence from the city, the city council held a meeting and appointed Wallace H. Wakefield chief of police. Wakefield thereupon entered upon the discharge of the duties of the office to which he was so appointed. The mayor refused to approve the appointment and subsequently also refused to sign salary warrants issued to Wakefield, particularly for the month of July, 1941. Thereupon the city council again met and adopted the following motion:

"It was moved by Keim and seconded by Kinney that City Attorney Earl Garrity start mandamus proceedings to force the mayor to sign the checks of Wallace Wakefield * * * city council appointed chief of police * * *."

On or about the 28th day of August, 1941, Wakefield commenced a proceeding in the District Court of the Seventh Judicial District in and for Canyon County, State of Idaho, against the mayor to compel him to sign the salary warrant issued for the month of July, 1941, in which proceeding the city attorney represented Wakefield and, therefore, was not in a position to represent the mayor. Accordingly, the mayor employed Frank F. Kibler, a duly and regularly licensed and practicing attorney of the State of Idaho to represent him in defending against the mandamus proceeding. That proceeding was tried and judgment entered December 1, 1941, dismissing the action against the mayor, from which no appeal was taken; the judgment, consequently, becoming final and conclusive. In defending against the mandamus proceeding the mayor

incurred a liability to pay an attorney fee in the sum of $250. March 2, 1942, he presented a claim therefor to the city council, which disallowed it. July 18, 1942, plaintiff and appellant commenced this action against the City of Nampa to recover the attorney fees so incurred, together with interest and costs. The city interposed a general demurrer to the mayor's complaint. September 14, 1941, the demurrer was heard. September 22, 1942, the demurrer was sustained. September 30, 1942, plaintiff and appellant refused to plead further, and the court thereupon entered judgment of dismissal, from which the mayor prosecuted an appeal to this court.

We will first discuss and consider *City of Nampa v. Kibler,* 62 Ida. 511, 113 P. (2d) 411; and *Clayton v. Barnes,* 52 Ida. 418, 16 P. (2d) 1056, to which respondent directs our attention.

*City of Nampa v. Kibler,* supra, involved the question as to whether the City of Nampa was liable for attorney fees, costs and expenses incurred by city police officers in defending against a charge of committing a battery while allegedly in the discharge of their official duties. This court held the city was not liable and that it was the duty of the police officers "to *execute,* not *violate,* the law", and pointed out that "there is another very sound objection to allowing a claim of this kind to be collected from the city, i.e., to do so would amount to licensing police officers to roughly handle prisoners or their relatives or friends, who call to see them, in that it would assure such officers that the municipality would pay the bill, if any, for their defense."

In *Clayton v. Barnes,* supra, it appears the assessor of Bonneville County employed clerical help in addition to that provided by the Board of County Commissioners and that the board refused to pay the claims for such services; that upon the refusal of the board to pay the claims, the assessor compelled payment by the prosecution of proceedings in mandamus against the board; that thereafter the assessor presented a claim to the board for the sum of $250 attorney fees incurred in the prosecution of the mandamus proceeding. This court expressly stated that "the only question here for determination is whether or not respondent [the assessor] without authority of the board of county commissioners, could employ an attorney in the mandamus proceedings and thereby create a legal claim

for attorney's fees against Bonneville county." An examination of this case discloses the decision of that question turned upon the construction of Sec. 6, Art. 18, of our Constitution, and C. S., Sec. 3428 (now Sec. 30-719, I. C. A.). While the question presented in the instant case is: Could appellant mayor employ counsel to defend him against the mandamus proceeding and thereby create a valid claim for attorney fees against respondent city, there are no like provisions in either our Constitution or statutes applicable to the employment of counsel and the creation of a legal claim against a city in circumstances like those in the case at bar. Furthermore, respondent "admits the authorities set out [by appellant] are controlling if the mayor had made his wants known and had applied to the City Council for legal assistance."

Is it necessary, as insisted by respondent, that an application be first made to the City Council "for legal assistance", where, as in the case at bar, the City Council was the real actor in the proceeding against appellant; where appellant was seeking to prevent, and did prevent, the payment of an illegal claim against the city; where appellant was acting in the interest and for the sole benefit of the city; where no aid could have been expected from the real actor in the mandamus proceeding against appellant; where the City Attorney was not in a position to represent appellant because he was prosecuting, as counsel, the proceeding against appellant; where all the facts and circumstances created an emergency making it necessary for appellant to employ counsel to aid him in preventing the payment of a void claim by the city?

It is the contention of appellant that it was his duty, as Mayor of the respondent city, to contest and prevent the payment of the Wakefield claim and in doing so that he was acting in the interest and for the sole benefit of the city, and in support of that contention, cites and primarily relies upon *Barnett v. City of Paterson* (Supreme Court of New Jersey), 6 Atl. 15, 16, 17. Therein the Supreme Court of the State of New Jersey passed upon the identical question presented for determination in the case at bar. Its discussion of this question is illuminating and persuasive, and its conclusion, we think sound. The court said:

"The law will not raise the volunteer to the position of a creditor. But this case is peculiar, and I think excep-

tional. The mayor, as head officer of the city, occupied a position of public trust. It was his duty, under the charter, 'to be vigilant and active in causing the ordinances of the city and the laws of the state to be executed and enforced; and, as far as possible, to promote efficient government in the city.' The proceeding taken in the name of the city against him, which gave rise to the expenditure sued for, was to compel him to a course of official action which he deemed violative of law, and detrimental to the interests of the city. To make proper defense service of counsel was necessary. If he was right in his judgment, the city should have furnished him the aid of proper counsel. *But the official law officer was in court against him, and the city authorities, to whom ordinarily he should have applied, were the real actors in the proceeding against him. It would, under these circumstances, have been idle* [as in the case at bar] *to make the application.* Ordinarily, his duty would have ended with an unsuccessful application to the official council, or, if the city council were not available, then by application to the appropriate authority to furnish other counsel; but he could not expect aid from either source in the existing situation. He was chargeable with the knowledge of his official duty, and was called upon then to decide what was the course of action which that duty demanded of him. The risk of decision was upon him. If he erred in judgment as to his legal duty on resisting the proceeding, he must, on demanding to be reimbursed his outlay, have stood as a mere volunteer, and borne the direct consequences of defeat. The judgment of the court which the parties invoked, vindicated his decision, and found him acting in obedience to the commands of the charter.

"I do not think the mayor's duty would have been discharged by silent submission to the action of the court on the rule to show cause why the mandamus should not issue against him. But, had he remained silent, then, when the alternate writ came, he would have been required to make return to it, and the same services of counsel would have then been indispensable. The city is at no loss because he met the matter at the threshold.

"The claim to be indemnified for his expenditures, *the entire benefit of which the city received, seems to me to be eminently just, and presents a strong case for relief in some mode.* I think in its behalf the general principle of

law may be invoked, that, where an officer is required by law to perform a duty involving the disbursement of money out of pocket, he must be reimbursed. The proper and only fund out of which it may be done in the plaintiff's case is that of the city in whose behalf, as its officer, and for whose benefit, he acted. The rules which circumscribe and limit the implied liability of municipal corporations are designed in the law as shields against the imposition of false claims, and to guard against extravagance in administration. It would be a strange perversion of their purpose to convert them into means to deter faithful public officers from honest effort to guard and protect public trusts confided to their care." [Emphasis ours.]

As contended by appellant, this court, in *City of Nampa v. Kibler*, supra, very clearly recognized the principle enunciated in *Barnett v. City of Paterson*, supra. In reviewing the various authorities cited by counsel for the respective parties in the Kibler case, the court pointed out that a situation might arise where a public officer is made a party defendant to an action or proceeding "wherein the real relief sought is against the municipality", as in the mandamus proceeding against the appellant, and that "in such cases it is almost uniformly held that the municipality is liable to meet the expenses incurred in defense of the action."

Furthermore, and as above pointed out in *City of Nampa v. Kibler*, supra, the question of the liability of the city to pay attorney fees arose over claims for attorney fees for defending a police officer, who was charged with an assault. Here the mayor is seeking reimbursement for expenses incurred in procurement of counsel to defend against an action which had, for its purpose, the collection of an illegal claim against the city. The duties of the mayor are prescribed in Sec. 49-321, I. C. A., as follows:

"The mayor shall preside at all meetings of the city council, and shall have a casting vote when the council is equally divided, and none other, and shall have the superintending control of all the officers and affairs of the city and shall take care that the ordinances of the city and of this title are complied with."

A conflict arose between the mayor on the one hand and the city council on the other. The council ordered a warrant drawn in favor of one they had pretended to appoint as chief of police. The mayor refused to sign the

warrant. The council used the services of the regular city attorney in an effort to mandamus the mayor to sign the warrant. The mayor employed special counsel and successfully defended the action. That action presented an emergency not contemplated by the statute; and still it was one that had to be met by the mayor or else let the city suffer to the extent of the invalid claim. This unquestionably presented a special emergency, which justified the action of the mayor, and is not unlike a case where the city attorney might have been absent, ill, or disqualified from acting (37 Am. Jur., p. 739, Sec. 125), in which case, the mayor would have had a right to at least nominate an attorney, and, since the conflict was between him and the council, whose duty it was to ratify the appointment, it would doubtless have been impossible for the mayor to procure an approval of his appointment. In the instant case the mayor was acting wholly and solely in the interest of the municipality he represented as its chief executive officer. *Barnett v. City of Paterson,* supra, was subsequently followed by the Supreme Court of Michigan in *Smedley v. City of Grand Haven,* 84 N. W. 626, 628, and the principle enunciated in those cases has been approved in substance in the following cases: *Wiley v. City of Seattle,* 7 Wash. 576, 35 Pac. 415, 38 Am. St. 905; *Louisville v. Murphy* (Ky.), 5 S. W. 194; L. R. A. 1917D, Ann., p. 256; 3 McQuillin, Mun. Corp., (2d. Ed.) par. 1276, p. 826.

It follows the judgment of dismissal must be reversed and the cause remanded, and it is so ordered, with direction to the trial court to overrule respondent's demurrer. Costs awarded to appellant.

Ailshie, Budge, Givens, and Dunlap, JJ., concur.