DECISION
Before this Court is an appeal by the Town of Cumberland, a municipal corporation, through its solicitor, from a decision issued by the Town of Cumberland Planning Board (Planning Board) that granted approval of a master plan proposed by Mendon Crossing, LLC, which resulted in the issuance of a comprehensive permit for development pursuant to the Rhode Island Low and Moderate Income Housing Act, G.L. 1956 § 45-53-1et seq. Jurisdiction in this Court is pursuant to § 45-53-4.
 I Facts and Travel
Mendon Crossing, LLC (Mendon), the owner of Tax Assessor's Plat 52, Lot 213, located at 3469 Mendon Road, Cumberland, Rhode Island, filed an application for a comprehensive permit to construct six condominium-style dwelling units — four units[1] to be sold at market price and two affordable units — on its lot. The six units would be apportioned among two buildings. The property is located in an R-1 zone, which is a low-density district designed for single-dwelling residential use. A piece of property found in an R-1 district will support a single-family dwelling if it has access to public sewer and water services, is comprised of a minimum of 25,000 square feet, and has 100 feet of frontage. Because Mendon's lot has an area of 18,540 square feet,[2] merely 20.2 feet of frontage, is zoned for single-family use, and the proposal exceeded the maximum lot building coverage, Mendon stated that it would be requesting four variances to meet *Page 3 
the dimensional and use restrictions of Cumberland's Code of Ordinances (the ordinance).[3]
During this application process, Mendon sought commentary from various municipal and state departments. It first received a letter of eligibility from Rhode Island Housing, stating that it met the criteria enabling it to pursue a comprehensive permit application in the Town. Additionally, Mendon received confirmation from Natural Resource Services, Inc. (NRS) that no freshwater wetlands appeared on the property. The Department of Environmental Management (DEM) provided no negative feedback regarding Mendon's project; rather, it provided guidance to Mendon regarding permits and evaluations that might be required during latter stages of the project. The Rhode Island Department of Transportation's Engineering Division remarked only that Mendon's proposal would require a Physical Alteration Permit Application (PAPA) for access to the state highway, which also could be obtained at a later phase of the approval process. The Town's Water Superintendent confirmed that water would be available for Mendon's project upon the installation of certain devices. Through a letter by Lieutenant Claude P. LaFlamme, the Cumberland Hill Fire Department voiced its concerns regarding the project's failure to meet certain emergency response and traffic flow criteria.
Upon reviewing Mendon's application, the Planning Department issued a certificate of completeness on December 6, 2006, and scheduled a public hearing on the proposal for December 18, 2006. The matter was continued until the January 31, 2007 meeting based on the Planning Board's conversation with Mendon regarding certain *Page 4 
problematic plan elements, including concerns raised by the Fire Department.[4] In the meantime, Mendon received correspondence from Lieutenant Laflamme indicating that its alternate plan — placing residential sprinkler systems in each unit, constructing a "T" style turn-around at the end of the development's access road, clearly marking the property's fire lane, and adding new hydrants on the property — acceptably addressed the Fire Department's initial concerns. In his January 18, 2007 letter to Mendon, the Lieutenant noted that Mendon would still require Fire Code variances for these alternate plans and stated that he would not object to Mendon's alternative solutions for the project at its hearing before the Fire Code Board of Appeal and Review.
After revising its plans to incorporate changes to accommodate the Planning Board's concerns, Mendon's project arrived at public hearing. On January 31, 2008, attorney Michael Kelly represented Mendon at the meeting. Brian R. Thalmann, an engineer also appearing on Mendon's behalf, made positive comments regarding certain project changes, among other alterations to the plan, relating to ingress and egress to the property, visitor parking, and snow removal, which had been addressed by Mendon's revised plan. Transcript, Jan. 31 Planning Board Meeting (Tr.), at 4. Thalmann also discussed the proposed underground drainage system that would serve the property to control any increases in runoff and the permits and monitoring associated therewith. Tr. at 14-17.
Attorney John Aubin, a Director in the Town's Department of Planning and Community Development, reiterated his overarching concerns regarding the project. Specifically, Aubin questioned the project's consistency with the Town's affordable *Page 5 
housing needs as set forth in the Comprehensive Plan's land use and housing elements, as well as its failure to comply with the existing ordinance.[5] In a letter dated January 30, 2008 to Attorney Michael Kelly, Aubin stated that the proposed development is not located within an area targeted for affordable housing; instead, Aubin contended that the project is located in an area designated for rural use. Aubin further remarked that the project was inconsistent with two housing element policies — one providing that allowable "infill" development should be consistent with the Town's zoning map and the surrounding neighborhoods, and another designed to protect residential neighborhoods from unwanted intrusions and impacts from incompatible land uses. Finally, Aubin faulted Mendon's application for its failure to reconcile the inconsistency between the proposed use — multi-family — and the current use permitted by the ordinance — single-family.
Attorney Kelly countered Aubin's concerns with commentary of his own, confirming that a list of required waivers had been provided to the Planning Board. Additionally, Kelly stated that the area, although zoned R-1, is "heavily developed[;]" multi-family homes already line the street, a gas station is across from the property, and an apartment building is at the rear of the project. He, therefore, suggested that Mendon's project was compatible with the area.
Despite Aubin's commentary, the Planning Board voted 6-1 to approve Mendon's master plan. It recognized that the waivers will not be considered until the project arrives at Preliminary Plan Review. Tr. at 21. The Planning Board also acknowledged that *Page 6 
several issues which had been raised earlier with respect to the design of the project had been satisfactorily addressed and incorporated into the plan's revisions. Tr. at 22. In approving Mendon's master plan, the Planning Board stated as follows:
 "keeping in mind the waivers, the variance requested, and the frontage area, that the proposed development is consistent with the local needs as identified in the local Comprehensive Community Plan, the particular emphasis on the community's affordable housing plan and has satisfactorily addressed the issues where there are any inconsistencies; that the development is in compliance with the standards and the provisions of the municipality's Zoning Ordinance, as we discussed; and the local concerns that have been affected by the relief granted does not outweigh the State low and moderate income housing; that the low and moderate income housing as proposed are integrated throughout the development; that they're similar in scale and architectural style as the market units within the project; and that there will be no significant negative environmental impacts from the proposed development as shown on the final plan with all the required conditions." Tr. at 19-20.
Only one Planning Board member, Mr. Robert Pelligrini, Jr., opposed the plan because he was "not comfortable with the number of units in the R-1 zone." Tr. at 23.
The Planning Board's approval of Mendon's comprehensive permit application and master plan is reflected in a written decision dated March 9, 2007, and was recorded in the Cumberland land evidence records. In response to the Planning Board's decision, the Town, by and through its solicitor, Thomas Hefner, filed a complaint in this Court.
 II The Applicable Standard of Review
The Act allows any person aggrieved by a Planning Board's issuance of comprehensive permit approval to appeal to the Superior Court.See § 45-53-4(a)(4)(x). The Act is silent, however, on the standard of review that should be applied in reviewing such an appeal. Appeals to the Superior Court for review of Planning Boards' decisions *Page 7 
with respect to the subdivision of land after such decisions have been challenged before a municipality's Zoning Board sitting as a Planning Board of Appeals are brought under § 45-23-71. That statute provides, in relevant part:
 "(b) The review shall be conducted by the superior court without a jury. The court shall consider the record of the hearing before the planning board and, if it appear to the court that additional evidence is necessary for the proper disposition of the matter, it may allow any party to the appeal to present evidence in open court, which evidence, along with the report, shall constitute the record upon which the determination of the court shall be made.
 (c) The court shall not substitute its judgment for that of the planning board as to the weight of the evidence on questions of fact. The court may affirm the decision of the board of appeal or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory, ordinance or planning board regulations provisions;
 (2) In excess of the authority granted to the planning board by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
Considering that this Court does not conduct a de novo review of Planning Boards' decisions with respect to subdivision matters, it also will not do so with respect to comprehensive permit applications.[6]
Instead, it shall review the Planning Board decisions using the "`traditional judicial' review standard that is applied in *Page 8 
administrative-agency actions." Monroe v. Town of East Greenwich,733 A.2d 703, 705 (R.I. 1999) (quoting Kirby v. Planning Board of Review ofMiddletown, 634 A.2d 285, 290 (R.I. 1993)). Furthermore, the Court can neither weigh witness credibility or the evidence, nor make findings of fact. Id. It is limited to examining the record to ascertain whether the Board's decision "rests upon competent evidence or is affected by an error of law." Monroe, 733 A.2d at 705 (citing Kirby, 634 A.2d at 290). Consequently, the record must contain "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance."Lischio v. Zoning Bd. of Rev. of North Kingstown, 818 A.2d 685, 690
(R.I. 2003) (quoting Caswell v. George Sherman Sand and Gravel Co.,424 A.2d 646, 647 (R.I. 1981)). Questions of law, however, are not binding upon a reviewing court and may be reviewed to determine what the law is and its applicability to the facts. Carmody v. Rhode Island Conflict ofInterest Com'n, 509 A.2d 453, 458 (R.I. 1986).
 III Analysis
The Town challenges its Planning Board's approval of Mendon's comprehensive permit application.[7] It first argues that the Planning Board failed to make findings of fact on which to base its approval. The Town also contends that the Planning Board's decision is contrary to, and therefore not in conformity with, Cumberland's Comprehensive Plan housing element or the Town's ordinance. Consequently, the Town *Page 9 
avers that the Planning Board's decision was clearly erroneous and otherwise arbitrary and capricious.
In response, Mendon asserts that the Town does not have standing to appeal the Planning Board decisions regarding an applicant's comprehensive permit. Mendon alleges that the Planning Board indeed made the necessary findings in order for this Court to affirm the Planning Board's issuance of Mendon's comprehensive permit.
 A Standing
This Court must determine whether the Town of Cumberland has standing to appeal the decision of its own Planning Board pursuant to provisions of the Rhode Island Low and Moderate Income Housing Act (the Act).[8]
According to § 45-53-4(a)(4)(x), only a "person aggrieved" by the issuance of a comprehensive permit approval may appeal that initial decision to the Superior Court. The Act itself does not shed light on who might fall under the category of aggrieved persons, although §45-24-31, which sets forth definitions relevant to the laws governing zoning ordinances, does.
A person or entity able to demonstrate that his or her property will be injured by a decision of an officer or agency responsible for administering the municipality's zoning ordinance qualifies as an aggrieved party as does "[a]nyone requiring notice under the *Page 10 
chapter." See § 45-24-31(4). Aggrievement in the personal sense has been described as "actual and practical, as distinguished from a mere theoretical, interest in the controversy," Hassell v. Zoning Board ofReview of the City of East Providence, 108 R.I. 349, 351, 275 A.2d 646,648 (1971) (citation omitted), which "results when the judgment whose review is sought adversely affects in a substantial manner a personal or property right of the applicant or imposes upon him some burden or obligation." Id. It is clear that the Town cannot meet this test for aggrievement; it does not own property adjacent to or nearby Mendon's proposal and is not a party requiring notice under the chapter, as its Planning Board is the body responsible for making decisions regarding the issuance of comprehensive permits.
The Court is mindful, however, that when invoked in a zoning context, the interpretation of aggrievement lends itself to both private and public interpretations. See City of East Providence v. Shell OilCo., 110 R.I. 138, 142-43, 290 A.2d 915, 917-18 (R.I. 1972). Consequently, "what constitutes `aggrievement' may be entitled to an expanded interpretation whenever `the public has an interest in the issue which reaches out beyond that of the immediate parties.'"Id. at 142, 290 A.2d at 917 (citations omitted). In the past, town solicitors have successfully invoked the aid of the courts "for the purpose either of restraining violations or of compelling compliance with the provisions of the enabling legislation or of any ordinance enacted pursuant thereto." Hassell, 108 R.I. at 352, 275 A.2d at 648-49. Similarly, a solicitor has been considered the proper party to enjoin a landowner from using his or her property in a way that violates a town's ordinance, Town of Coventry v. Hickory Ridge Campground, Inc.,111 R.I. 716, 712, 306 A.2d 824, 827 (1973), or to urge on appeal that a decision of its zoning *Page 11 
board should be upheld by a reviewing court after an initial reversal.See Town of Coventry Zoning Board of Review v. Omni Dev't Corp.,814 A.2d 889, 897 (R.I. 2003). Additionally, public aggrievement sufficient to warrant standing "occurs whenever there is a threat to the very real and legitimate interest which the general public has in the preservation and maintenance of the integrity of the zoning laws." Id. at 143, 918.
In City of Providence v. Shell Oil, the Rhode Island Supreme Court determined that a city solicitor, in the name of the city, was an aggrieved person who could properly appeal a decision of the city's zoning board. 110 R.I. at 143, 290 A.2d at 918. In that case, the zoning board granted a special exception to an applicant after the Supreme Court had already overturned that same board's decision with respect to identical relief granted to the same applicants (or their successors) for the same property less than a year earlier. Id. at 140,290 A.2d at 918. The Court opined that the board acted "in complete disregard of the pertinent provisions of the zoning ordinance . . . in direct contravention . . . of the zoning ordinance as that ordinance had been construed by [our Supreme Court], and that . . . the board deliberately flaunted the [Court's] authority. . . ." Id. at 140, 290 A.2d at 916.
Although the Court agrees with Mendon that Shell Oil is factually distinguishable from the instant matter, it remains unconvinced that its reasoning is inapplicable here. In that case, our Supreme Court recognized that a public aggrievement occurs when the "preservation and maintenance of the integrity of the zoning laws" is at stake — specifically, at times when a municipal board fails to abide by its own ordinance and follow directives articulated by the courts. The Rhode Island Supreme Court recently commented that revisions to the Act — notably, § 45-53-4 relating to the reviewing *Page 12 
authority's factual findings — have elevated the common-law rule requiring detailed factual findings to that of a statutory mandate.See East Bay Cmty. Dev't Corp. v. Zoning Board of Review, 901 A.2d 1136,1146 n. 11 (R.I. 2006); see also JCM, LLC v. Town of Cumberland ZoningBoard of Review, 889 A.2d 169, 177 (R.I. 2005) (stating "recent amendments to the housing act support the conclusion that a zoning board's duty to produce a competent factual record is without exception"). This declaration, coupled with the solicitor's allegations that the Planning Board arbitrarily, capriciously, and without factual findings issued a comprehensive permit to an applicant without regard to this statutory language and the ordinance provision, warrant the solicitor's action.
Additionally, although Mendon argues that the Planning Board's review of its application at this stage is not final, its initial determination of the project's compatibility within the surrounding neighborhood with respect to its affordable housing plan is an essential component of the Act. E. C. Yokley, 4 Zoning Law Practice § 24-3 (4th ed. 2003) (recognizing aggrievement involves questions of fact for trial court to determine). At this stage, the Planning Board is required to make positive findings, specifically with respect to the Town's low and moderate income housing needs. See § 45-53-4(a)(4)(v)(A). It must also find that any permissive deviation from the Town's ordinances and regulations does not constitute relief that outweighs state or local needs for low and moderate income housing. See § 45-53-4(a)(4)(v)(B). Further, any affordable units proposed must be satisfactorily integrated within, similar to, and constructed and occupied close in time to the market rate units in the development. See § 45-53-4(a)(4)(v)(C). *Page 13 
Since the Planning Board is the same body that is designated to approve both subdivision and major land development projects, it might not be inclined to revisit these particular determinations after comprehensive permit review has been completed. See § 45-23-60
(governing findings required for development approval, notably silent on additional findings required by Act). Because the public and the Town have an interest in the proper evaluation of these standards to promote orderly growth and development within the Town, the Planning Board cannot disregard those rules which govern its discretionary approval of comprehensive permits under the Act.[9] See Bd. of Supervisors ofFairfax County v. Bd. of Zoning Appeals, 604 S.E.2d 7, 9 (Va. 2004) (commenting uniform application of ordinance is a valid local concern and improper board activity can "undermine and even destroy the very goals that the zoning classifications were enacted to achieve");see also City of Burley v. McCaslin Lumber Co., 693 P.2d 1108, 1110
(Idaho Ct.App. 1984) (finding city has standing to challenge zoning board decision as it is interested in maintenance and development of property contained within its boundaries which might be adversely affected by improperly issued variance). Consequently, the Court holds that in the circumstances of the instant action, the town solicitor of Cumberland was an "aggrieved" person within the meaning of § 45-53-4, acted to "protect [the town's] interest in the preservation and maintenance of a proper and adequate zoning system[,]" and therefore, has standing to appeal the Planning Board's decision to the Superior Court. Hassell, 108 R.I. at 353, 275 A.2d at 649. *Page 14 
Mendon makes an additional argument regarding the solicitor's ability to pursue this appeal. Because the town solicitor is charged with representing the town planning and zoning boards in all advisory and adversary matters pursuant to the Cumberland Charter, Mendon argues that a conflict of interest has arisen as a result of Attorney Hefner's representation of the Town for purposes of this appeal. Specifically, Mendon contends that the town solicitor currently represents both parties in this matter and, therefore, is precluded from participating in this suit.
Section 604 of the Town of Cumberland's Home Rule Charter states that "[t]he Town Solicitor shall be the attorney for the town and the legal advisor to the Mayor, Town Council, and all other departments, offices, and agencies of the Town government." Consequently, the solicitor shall "[a]ppear for and protect the rights of the town in all actions, suits and proceedings, civil or criminal, in law or equity, brought by or against it or for or against any of its departments[.]" Cumberland Home Rule Charter at § 604. "It is obvious as one reads this article in its entirety that the framers of the charter and those who approved it intended that the town solicitor's office would serve as the sole source of legal assistance for all the various municipal boards, departments, and agencies that operate within the aegis of the charter."Coventry Sch. Comm. v. Richtarik, 122 R.I. 707, 714, 411 A.2d 912, 915
(1980) (interpreting similar language in another municipality's charter). However, section 604 additionally provides that nothing within the section shall "prohibit the Council from making provision for the hiring of special counsel to assist or act in the place of the Town Solicitor, in extraordinary and limited circumstances, when in the judgment of the Council such provision will best serve the interests of the Town." *Page 15 
Mendon cites two cases — Town of Johnston v. Santilli, 892 A.2d 123
(R.I. 2006), and Retirement Board of the Employees' Retirement System ofthe City of Providence v. City of Providence, 666 A.2d 810 (R.I. 1995) — in support of its position that the town solicitor cannot successfully bring this action due to a conflict of interest. In Santilli, the local teachers' union sued the school committee of the Town of Johnston, which then retained independent counsel to defend itself. 892 A.2d at 126. As Mendon correctly states, the Rhode Island Supreme Court acknowledged that indeed "it would be difficult if not impossible" for a town solicitor to represent two parties in the same municipality.Id. at 131. Despite this acknowledgement, the Court recognized that a town solicitor could defend a town department — the school committee — in a suit brought against it by a third party even though the town and the committee have held or currently hold opposing positions in unrelated matters.[10] Id. at 131-33. Although it found the Code of Ethics and the Supreme Court Rules of Professional Conduct significant in determining the proper representation of a town entity by the solicitor, it noted that such regulations would not necessarily serve as an absolute bar to a solicitor's representation of the school committee while also representing the town in other matters. Id. at 132.
The Santilli Court further determined that "[c]onflicts must be determined utilizing a case-by-case analysis and will necessarily require good faith dealing among the solicitor, the [board], and the municipality." 892 A.2d at 132. This commentary was echoed in theRetirement Board case as well, where our Supreme Court noted that a city board may hire outside counsel "only in exceptional circumstances."666 A.2d at 813. *Page 16 
For example, a municipal board or officer need not be represented by the town solicitor and has "the implied authority . . . to hire counsel in the good-faith prosecution or defense of an action taken in the public interest and in conjunction with its or his official duties where the municipality's attorney refuses to act or is incapable of or is disqualified from acting." Id. (quoting Richtarik, 122 R.I. at 715,411 A.2d at 916); see also Retirement Board, 666 A.2d at 812-13 (commenting solicitor cannot be expected to properly represent both city's agency and city where parties are on opposing sides). Instances in which a solicitor has been engaged by one department of a city to pursue a suit against the mayor or another department fall within this exception.See Waigand v. Nampa, 133 P.2d 738, 741 (Idaho 1943); see also Cahn v.Town of Huntington, 29 N.Y.2d 451, 453-56 (N.Y.Ct.App. 1972) (finding planning board properly hired independent counsel to defend itself against town board which was represented by town attorney);Retirement Board, 666 A.2d at 813 (necessarily implying that solicitor would represent town while board entitled to hire independent counsel).
The aforementioned cases indeed support the proposition that "[a]n attorney may not simultaneously represent adverse parties." EmpireEquip. v. Sullivan, 565 A.2d 527 529 (R.I. 1989); see also Ball v.Montgomery Twp. Bd. of Supervisors, 598 A.2d 633, 636 (Pa.Commw.Ct. 1991) (recognizing potential for conflict where "solicitor first acted as an advisor and then as an advocate for a party" in the same proceeding). The Cumberland town solicitor has not done so with respect to the parties in this case. In fact, quite the opposite has occurred. Contrary to Mendon's assertions that the solicitor "represents" both the Town and the Planning Board, this Court observes that John T. Gannon, another attorney, has been formally authorized by the Town Council to represent *Page 17 
the Town as Special Counsel in zoning and comprehensive permit application matters.[11] Even before his formal appointment, on April 11, 2007, Mr. Gannon accepted service of the Town's Complaint on behalf of the Cumberland Planning Board and each of the members named in his or her official capacity.[12] The Planning Board neither has responded to that Complaint with an Answer, nor has produced any memoranda to aid the Court in this matter; indeed, it appears as though the Planning Board is not defending this suit at all. Although Mr. Hefner certified additional Planning Board records on April 23, 2007, the record is devoid — contrary to Mendon's assertion — that Mr. Hefner made any commentary regarding the Town's or the mayor's disfavor of Mendon's application.[13] Consequently, he is not barred by conflict from prosecuting this appeal on behalf of the Town in opposition to the issuance of a Comprehensive Permit.
 B The Planning Board's Findings
The Town asserts that the content of and support for the Planning Board's issuance of Mendon's comprehensive permit was deficient. It asserts that the Planning Board's decision merely recited the positive findings required by § 45-53-4 prior to the approval of a comprehensive permit. Additionally, the Town avers that the Planning Board erroneously issued Mendon's permit because the property neither was located in an area "targeted' for affordable housing units nor fell into a zoning use district *Page 18 
designated for multi-household dwellings. Mendon, on the other hand, alleges that the Planning Board's findings of fact met the demands set forth in § 45-53-4(a)(4)(v).
In reviewing a Planning Board's findings, this Court "may `not substitute its judgment for that of the [board] as to the weight of evidence on questions of fact.'" See Curran, 672 A.2d at 454 (quoting § 45-24-69(d)). "This deferential standard of review, however, is contingent upon sufficient findings of fact by the zoning board."Kaveny v. Town of Cumberland Zoning Board of Review, 875 A.2d 1, 8 (R.I. 2005); see also JCM, LLC v. Town of Cumberland Zoning Board ofReview, 889 A.2d 169, 177 (R.I. 2005) (stating and citing same). A board's findings, coupled with its reasons for the actions taken, are essential to proper judicial review of any appealed matters.Bernuth v. Zoning Board of Review of New Shoreham, 770 A.2d 396, 401
(R.I. 2001). "Those findings must, of course, be factual rather than conclusional, and the application of the legal principles must be something more than the recital of a litany." Irish Partnership v.Rommel, 518 A.2d 356, 358-59 (R.I. 1986). Therefore, where a board has failed to state its findings of fact, "the Court will not search the record for supporting evidence or decide for itself what is proper in the circumstances." Kaveny, 875 A.2d at 8 (citations omitted);see also JCM, 889 A.2d at 176 n. 7 (commenting courts will not scour record for support of board's "laconic" decision).
Section 45-53-4(a)(4)(v) governs a local board's findings regarding its approval of a comprehensive permit, and provides as follows:
 "Required findings. In approving on an application, the local review board shall make positive findings, supported by legally competent evidence on the record which discloses the nature and character of the observations upon which the fact finders acted, on each of the following standard provisions, where applicable: *Page 19 
 (A) The proposed development is consistent with local needs as identified in the local comprehensive community plan with particular emphasis on the community's affordable housing plan and/or has satisfactorily addressed the issues where there may be inconsistencies.
 (B) The proposed development is in compliance with the standards and provisions of the municipality's zoning ordinance and subdivision regulations, and/or where expressly varied or waived local concerns that have been affected by the relief granted do not outweigh the state and local need for low and moderate income housing.
 (C) All low and moderate income housing units proposed are integrated throughout the development; are compatible in scale and architectural style to the market rate units within the project; and will be built and occupied prior to, or simultaneous with the construction and occupancy of any market rate units.
 (D) There will be no significant negative environmental impacts from the proposed development as shown on the final plan, with all required conditions for approval.
 (E) There will be no significant negative impacts on the health and safety of current or future residents of the community, in areas including, but not limited to, safe circulation of pedestrian and vehicular traffic, provision of emergency services, sewerage disposal, availability of potable water, adequate surface water run-off, and the preservation of natural, historical or cultural features that contribute to the attractiveness of the community.
 (F) All proposed land developments and all subdivisions lots will have adequate and permanent physical access to a public street in accordance with the requirements of § 45-23-60(5).
 (G) The proposed development will not result in the creation of individual lots with any physical constraints to development that building on those lots according to pertinent regulations and building standards would be impracticable, unless created only as a permanent open space or permanently reserved for a public purpose on the approved, recorded plans."
The Rhode Island Supreme Court has commented that the recent revisions to the Act — specifically, § 45-53-4 relating to the reviewing authority's factual findings — have elevated the common-law rule requiring detailed factual findings to that of a statutory *Page 20 
mandate. East Bay Cmty. Dev't Corp. v. Zoning Board of Review,901 A.2d 1136, 1146 n. 11 (R.I. 2006); see also JCM, 889 at 177 (stating "[r]ecent amendments to the housing act support the conclusion that a zoning board's duty to produce a competent factual record is without exception"). "The only plausible justification for including this language in the amended statute is to ensure that, on appeal, [the reviewing body] has something to meaningfully review." JCM,889 A.2d at 177 (emphasis in original).
Although the record might garner some support for the Planning Board's decision to approve Mendon's comprehensive permit, the lens through which this Court must look while evaluating this matter prohibits it from "searching" the record. See Cullen v. Town Council, 850 A.2d 900,904 (R.I. 2004) (stating sufficient findings of fact required for reviewing court to see how evidentiary conflicts were resolved). In its written decision, the Planning Board did little more than recite the boilerplate language of § 43-54-4(a)(4)(v), which describes the findings required prior to approving a comprehensive permit. In a document entitled "Findings of Fact Decision," dated February 28, 2007, the Planning Board offered support for its motion to approve Mendon's comprehensive permit application as follows:
 (1) The proposed development is consistent with the Cumberland Comprehensive Community Plan, as amended, the particular emphasis on the community's affordable housing plan has satisfactorily addressed the issues where there are any inconsistencies;
 (2) The proposed development is in compliance with the standards and provisions of Cumberland's Zoning Ordinance;
 (3) That the low and moderate income housing as proposed are integrated throughout the development;
 (4) There will be no significant negative environmental impacts from the proposed development as shown on the final plan, with all required conditions of approval; *Page 21 
 (5) There will be no significant negative impacts on the health and safety of current or future residents of the community in the areas of safe circulation of pedestrian and vehicular traffic, provision of emergency services, sewerage disposal, availability of potable water, adequate surface water run-off, and the preservation of natural, historical or cultural features that contribute to the attractiveness of the community.
 (6) All lots will have adequate and permanent physical access to a public street; and
 (7) The proposed development will not result in the creation of lots with constraints to development that would result in building on lots that would be impracticable.
These conclusory statements do not demonstrate that the Planning Board sufficiently considered evidentiary conflicts, resolved any such conflicts, or produced thoughtful findings which would be readily available for review. See JCM, 889 A.2d at 176 (stating "[a] satisfactory factual record is not an empty requirement").
Based on Mr. Aubin's commentary, it is apparent that the Planning Board had information that the project site was not "targeted" for affordable housing and was incompatible with existing zoning, as evidenced by the variances requested. At a minimum, the Planning Board did not resolve these conflicts sufficiently. It made no findings geared toward balancing the relief proposed in the form of variances to Mendon against the state's and Town's need for affordable housing. Further, the Planning Board did not articulate any findings to support that Mendon's proposal would satisfy the health, safety, environmental, and design expectations implicitly contemplated by the Act and the Town's ordinance.
Our Supreme Court has held that findings which are "nothing more than conclusions of law, entirely unsupported by competent findings of fact . . . can hardly be [an] administrative record envisaged by the General Assembly when enacting the housing *Page 22 
act." Id. at 177. Consequently, this Court concludes that the Planning Board's decision is fatally flawed. In the absence of sufficient findings to support the Planning Board's issuance of Mendon's comprehensive permit, the Court vacates the Planning Board's decision and remands the case to the Planning Board for further proceedings consistent with this Decision. On remand, the Planning Board should set forth clear findings of fact, referring to the evidence presented, and should ensure that its conclusions of law are properly supported by those findings.
 IV Conclusion
The Court concludes that the town solicitor, acting on behalf of the Town of Cumberland in an effort to preserve and maintain the integrity of the Town's zoning ordinance, has standing as an aggrieved person to appeal a decision of the Cumberland Planning Board pursuant to §45-53-4. In view of the lack of factual findings to support the Planning Board's approval of Mendon Crossing, LLC's comprehensive permit, the Court remands the case to the Cumberland Planning Board for further proceedings consistent with this Decision. The Board should fulfill its statutory mandate in making conclusions of law properly supported by findings of fact based on substantial evidence in the record.
Counsel shall submit the appropriate order for entry.
[1] Mendon initially proposed building seven total units, five of which would be sold at market price and two of which would be sold as affordable housing.
[2] Mendon's Comprehensive Permit Application states that its lot contains 18,540 square feet; Mendon's memorandum of law in support of upholding the Planning Board's decision states that the lot contains 18,854 square feet.
[3] At the January 31, 2007 Planning Board meeting, an engineer working with Mendon stated that Mendon had requested only three variances; a variance addressing maximum lot building coverage was not mentioned.
[4] It appears, upon examining the January 31, 2007 Planning Board meeting transcript, that the Planning Board also was concerned with visitor parking spaces.
[5] Aubin's predecessor previously sent a memorandum to the Planning Board addressing the Town's need for affordable housing and stating that Mendon's project was in compliance with the Housing Element of the Town's Comprehensive Plan, but would require relief from the existing ordinance. See Memorandum from Merrick A. Cook, Jr., Director, to the Planning Board, December 11, 2006.
[6] Note also that when a board of appeals reviews a local planning board's decision with respect to subdivision approval, it, too, is precluded from substituting its own judgment for that of the planning board. See § 45-23-70(a) (providing "board of appeal shall not substitute its own judgment for that of the planning board . . . but must consider the issue upon the findings and record of the planning board"). The board of appeals is likewise limited to examining the findings and record of the planning board. See id. Further, where the Superior Court must examine a zoning board of review's approval of an application for a special exception to the zoning ordinance under the Act, the Court will also use this limited standard of review.See Curran v. Church Cmty. Housing Corp., 672 A.2d 453, 454-55 (R.I. 1996).
[7] Although the Planning Board and each of its members in his or her official capacity have been named in the Town's complaint and service of such complaint was accepted by Attorney John Gannon, neither the Planning Board nor its members have provided an answer to the Town's complaint or submitted memoranda in support of its position.
[8] Mendon has framed its "standing" argument as a motion to dismiss. Mendon avers that the Town's complaint should be dismissed by virtue of Rhode Island Superior Court Rules of Civil Procedure 12(b)(1) and 12(b)(6) for failure to state a claim upon which relief can be based and for lack of subject matter jurisdiction. The Court acknowledges Mendon's arguments, but addresses them in a framework conducive to the review of planning and zoning board decisions as prescribed by the Rhode Island Low and Moderate Income Housing Act, as well as by the State's General Laws relating to subdivisions and zoning ordinances. See Sarni v.Meloccaro, 113 R.I. 630, 636, 324 A.2d 648, 651-52 (1974) (interpreting liberally Rhode Island Rules of Civil Procedure, thereby permitting Court to "look to substance, not label" of appellant's vehicle for relief); see also Providence Worcester Co. v. Blue Ribbon BeefCo., 463 A.2d 1313, 318 (R.I. 1983) (treating party's request for specific performance as action to compel execution and delivery of lease extension in "look[ing] to substance [of request] not labels").
[9] Mendon additionally asserts that because the Planning Board is "part" of the Town, the Town has implicitly approved its project and cannot now challenge that approval. The Court finds this argument without merit. "The mere issuance of a permit . . . pursuant to an administrative decision [or] an ordinance . . . does not, in itself, prohibit the municipality from later contesting its issuance . . .if there be a question as to whether or not the permit or variance wasproperly and legally issued." Schechter v. Zoning Board ofAdjustment, 149 A.2d 28, 32 (Pa. 1959) (citations omitted) (emphasis in original); see also Town of Johnston v. Pezza, 723 A.2d 278, 283-84
(R.I. 1999) (recognizing town not estopped from challenging unlawful issuance of building permit).
[10] The Court noted that the town and its school committee had been battling about certain money and budgetary control issues in the past. It specifically recognized that "[e]ach time one of these intramural slugfests has occurred, the town solicitor has represented the town and the school committee has retained outside counsel." Town of Johnston v.Santilli, 892 A.2d 123, 125-26 (R.I. 2006).
[11] Gannon was named "Special Counsel for zoning and comprehensive permit application for the fiscal year 2007-2008" as formally authorized by the Town Council on July 18, 2007.
[12] Although Attorney Gannon signed in a spot designated for Plaintiff's attorney, the Court acknowledges that the Stipulation specifically states that "I [John Gannon] hereby accept service on behalf of the Town of Cumberland Planning Board members . . ." and Mr. Gannon's signature is the only one appearing on the page.
[13] At the January 31, 2007 Zoning Board meeting, Mr. Hefner introduced himself on the record, stating "I am here on behalf of the Town, the Administration." Cumberland Zoning Board Transcript, January 31, 2007, at 3. The transcripts do not reflect any other commentary by Hefner with respect to Mendon's project.